**SHOTGUN DELIVERY, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. C–98–4835 SC.

United States District Court, N.D. California.

Jan. 20, 2000.

Dennis L. Perez, Steven D. Blanc, Hochman Salkin, Rettig, Toscher & Perez, Beverly Hills, CA, for Shotgun Delivery Inc., plaintiff.

Thomas E. Moore, III, U.S. Dept of Justice Torts, Civil Division, San Francisco, CA, Jay R. Weill, U.S. Attorney's Office, Tax Division, San Francisco, CA, for United States of America, defendant.

## ORDER RE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

CONTI, Senior District Judge.

### I. *INTRODUCTION*

In the above-captioned case, Plaintiff Shotgun Delivery, Inc., ("Shotgun") brings an action against Defendant United States of America ("United States"), for the recovery of internal revenue taxes which it claims have been wrongfully assessed and collected. The United States has filed a counterclaim against Shotgun to reduce this matter to judgment and collect the assessed but as yet unpaid internal reve-

nue taxes, penalties and interest for which Shotgun is liable under Section 3121(a) of the Internal Revenue Code ("IRC").

## II. *BACKGROUND*

Shotgun is a California corporation, engaged in the business of providing courier services for point-to-point deliveries. Drivers employed by Shotgun generally use their own vehicles to make pick-ups and deliveries. These drivers would notify Shotgun of when they were available to work and would then be radio dispatched on an as needed basis.

Shotgun charged its customers based on distance, time required for delivery, waiting time and weight. The total amount a customer was charged for any one job was called a "tag rate." Usually, Shotgun would charge a customer a fixed amount per mile for delivery. The distance between pick-up and delivery locations was determined based on Shotgun's experience and the California Public Utility Commission's point-to-point mileage book. On certain deliveries Shotgun would "double-up," in that if there were several requests for pick-up and delivery in the same cities, then Shotgun would charge each customer for the full distance between the pick-up and delivery locations while only being required to use a single driver to make the one trip.[1] However, drivers for Shotgun were not allowed to double-up on rush deliveries. Further, Shotgun would also charge an additional amount for overweight items or rush deliveries.

During the relevant years 1991–1992, Shotgun drivers were paid on a commission basis. *See,* Moore Declaration, Exh.

C. Drivers received 40% of the tag rate for each delivery job they completed.[2] After submitting their hours worked, distance traveled and tag rates charged, Shotgun's drivers were paid via two separate checks. The first check was a wage check for hours worked calculated at $4.25 per hour for regular time and $6.38 per hour for overtime. The second check, referred to as reimbursement of expenses/lease fee,[3] was the 40% commission minus the wage check. The sum of the two checks would always equal 40% of the tag rate for all the jobs each driver completed. Shotgun did not treat the second check as constituting wages but rather reimbursement and therefore did not make withholdings for income tax or employment taxes nor did it report the amounts on its employee-drivers' W-2 Forms.

During an audit of Shotgun, the Internal Revenue Service ("IRS") determined that the monies disbursed in these second checks had been improperly classified as reimbursement instead of wages. Subsequently, on or around September 2, 1996 the IRS issued an assessment of employment taxes (Forms 940 and 941), penalties and interest in the amount of $453,186.95 against Shotgun for all four quarters of both 1991 and 1992, pursuant to § 62 of the IRC. See 26 U.S.C. § 62 (1999). Shotgun paid $18,000.00 toward these assessments. On April 22, 1997 Shotgun filed a claim with the IRS for a refund of $7,000.00. This claim was denied on August 29, 1997. On March 6, 1998 Shotgun filed a claim with the IRS for a refund of $11,000.00. This claim was denied on June 9, 1998.

---

1. Thus, a Shotgun courier could drive to two locations in City A to pick up packages bound for City B and then deliver both of those packages to City B and Shotgun would charge each of the two customers for the mileage between City A and B.

2. It should be noted that Shotgun drivers were guaranteed a minimum payment of $250.00 per week if they were available to make deliveries from 8:30 a.m. to 5:30 p.m. Monday through Friday.

3. Shotgun paid no additional compensation to its drivers for the "lease" of their vehicles. *See,* Farin Declaration at 34–35. Shotgun merely leased the vehicles owned by its drivers as required by the California Public Utilities Commission for the sole purpose of establishing the financial responsibility of Shotgun for the vehicle while it was used for deliveries. *See,* Farin Deposition at 33; Farin Exh. N.

On December 18, 1998, Shotgun filed its complaint against the United States seeking a refund of $18,000.00 paid to the IRS. The United States answered and counterclaimed against Shotgun seeking judgment and full payment of the assessed taxes, interest and penalties. Shotgun contends that the IRS assessment was incorrect because its reimbursement system constituted a valid accountable plan under § 62 of the Internal Revenue Code ("IRC"). The United States counters that the IRS assessment was correct and that Shotgun's reimbursement system did not in fact constitute a valid accountable plan.

Now before the Court is the United States' Motion for Summary Judgment on its counterclaim.

### III. *LEGAL STANDARD*

Summary judgment is proper only when there is no genuine issue of material fact and, when viewing the evidence in the light most favorable to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. *See* Fed.R.Civ.P. 56(c); *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir.1994). Once a summary judgment motion is made and properly supported, the nonmoving party may not rest on the mere allegations of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See* FedR. Civ.P. 56(e); *Celotex Corp. v. Myrtle Nell Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In addition, to withstand a proper motion for summary judgment, the nonmoving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, if the nonmoving party has the burden of proof on a given issue, the moving party can prevail by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

### IV. *DISCUSSION*

The issue before this Court is whether the amounts paid to Shotgun's employee-drivers for automobile expense allowances constitute wages subject to employment taxes. Plaintiff contends that the expense reimbursements paid to its drivers were made pursuant to an accountable plan. Pursuant to § 62(a)(2)(A) of the IRC, under certain circumstances a taxpayer is permitted to deduct from his gross income those reimbursements for business expenses paid or incurred by the taxpayer "under a reimbursement or other expense allowance arrangement with his employer." 26 U.S.C. § 62(a)(2)(A).

Section 62(c) provides that:

> For purposes of subsection 62(a)(2)(A), an arrangement shall in no event be treated as a reimbursement or other expense allowance arrangement if—
>
> (1) such arrangement does not require the employee to substantiate the expenses covered by the arrangement to the person providing the reimbursement, or
>
> (2) such arrangement provides the employee the right to retain any amount in excess of the substantiated expenses covered under the arrangement.

26 U.S.C. § 62(c); *see also* 26 C.F.R. § 1.62–2(b).

Under the implementing regulations for § 62 of the IRC, "a reimbursement or other expense allowance arrangement" constitutes an accountable plan if the arrangement meets the following three crite-

ria. First, the expense reimbursements must be for business-related activities only. *See* 26 C.F.R. § 1.62–2(d). Second, the expenses must be substantiated to the employer within a reasonable period of time. *See id.* at § 1.62–2(e). Finally, the arrangement must require that the employee return to his employer within a reasonable time, any amounts paid in excess of the expenses substantiated. *See id.* at § 1.62–2(c)(2)(I). Amounts paid by an employer under an "accountable plan" are excluded from the employee's gross income, are not reported as wages or other compensation on the employee's W–2 form, and are exempt from the withholding and payment of employment taxes. *See id.* at § 1.62–2(c)(4). If the employer's expense arrangement does not meet the three criteria listed above, the reimbursements are treated as paid under a "nonaccountable plan", and the payments are included in the employee's gross income, must be reported as wages on the employee's W–2 form, and are subject to withholding and the payment of employment taxes. *See id.* at § 1.62–2(c)(3) and 1.62–2(c)(5).

### A. *Business Connection*

In order to meet the business connection requirement of an accountable plan, payments must be for business expenses "that are allowable as deductions [under Section 161 et seq. of the IRC], and that are paid or incurred by the employee in connection with the performance of services as an employee of the employer." *Id.* at § 1.62–2(d)(1). If an employer pays an amount to the employee as a business expense regardless of whether the employee incurs, or is reasonably expected to incur, the business expense, the payment does not meet the business connection requirement. *Id.* at § 1.62–2(d)(3)(1).

■ In the instant action, Shotgun's reimbursement program does not meet the business connection requirement. Shot-

gun's reimbursement arrangement reimbursed its drivers regardless of actual mileage driven or expenses incurred. Instead, Shotgun drivers' reimbursement amounts were determined by 40% of the tag rates for the deliveries they completed minus their hourly wages. *See* supra 963–64. Thus, there was no fixed cents-per-mile reimbursement and the actual reimbursement rate ranged from .04 cents to 77 cents per mile.[4] *See,* Farin Deposition, Exhs. M1, M2. Because Shotgun's tag rates were not based solely on distance traveled and since Shotgun drivers could double up on deliveries, Shotgun's reimbursement arrangement, was in fact, reimbursing its drivers in a manner not correlated to expenses Shotgun's employees incurred or were reasonably expected to incur. Thus as the expense reimbursements paid by Shotgun do not meet the business connection requirement, they were paid pursuant to a nonaccountable plan, and all amounts paid under the arrangement should have been reported as wages or other compensation on the Shotgun drivers' W–2 forms, and are therefore subject to withholding and the payment of employment taxes.

### B. *Substantiation and Returning Amounts in Excess of Expenses*

Due to this Court's ruling that Shotgun has not met the business connection requirement, it is unnecessary for the Court to decide whether the other two requirements for an accountable plan have been met. That fact notwithstanding, it should be noted that regarding the substantiation requirement, at the end of every pay period Shotgun drivers did submit reports detailing the hours worked and miles driven each day, which would ostensibly be sufficient to meet the second requirement of an accountable plan. However, Shotgun did not fulfill the returning amounts in excess requirement. It is clear that regardless of any effort made to prevent reimbursement

---

4. The standard IRS mileage reimbursement rate was 27.5 cents per mile in 1991 and 28 cents per mile in 1992.

above the allowable per-mile rate, such excess reimbursements were in fact made. Despite this fact, Shotgun did not require its drivers to return these excess reimbursements. Thus, Shotgun's reimbursement arrangement also fails the third requirement for a valid accountable plan.

### C. Abusive Nonaccountable Plans

The United States further asserts that Shotgun's reimbursement arrangement was · abusive under § 1.62–2(k). This Court agrees. This anti-abuse provision reads as follows: "If a payor's reimbursement or other expense allowance arrangement evidences a pattern of abuse of the rules of section 62(c) and this section, all payments made under the arrangement will be treated as made under a nonaccountable plan." 26 C.F.R. § 1.62–2(k) (1999). As Shotgun's reimbursement arrangement had no logical correlation to actual expenses incurred it was an abuse of section 62(c) and is therefore a nonaccountable plan.

### D. Penalty Reduction

Finally, Shotgun contends that should this Court find its reimbursement arrangement to constitute a nonaccountable plan, then the assessed penalties should be vacated because the Shotgun reimbursement arrangement was created in reliance on the advice of its accountant. Shotgun cites *Henry v. Commissioner of Internal Revenue*, 170 F.3d 1217 (9th Cir.1999), in support of this proposition. In *Henry*, the Ninth Circuit vacated penalties assessed against a taxpayer, finding that the petitioner in that case had consulted and reasonably relied upon his long-time accountant's preparation of his taxes. *Id.* at 1220.

 In the instant action, Shotgun based its plan on advice given by its outside accountant, Robert Borelli ("Borelli"), regarding three methods to properly comply with amended tax code provisions. Farin Deposition at 12; Borelli Declaration. Shotgun developed a plan similar but not identical to one described by Borelli.[5] Further, Shotgun failed to consult Borelli subsequent to instituting their plan to ensure proper compliance. Thus, while Shotgun did receive advice from an accountant regarding compliance with section 62(c) of the IRC it did not follow that advice properly and cannot now claim reliance in an effort to avoid penalties.

### V. CONCLUSION

Based on the fact that Shotgun's plan did not constitute a valid accountable plan, the IRS properly assessed Shotgun for unpaid taxes interest and penalties. As there is no material issue of fact as to whether the amounts paid to Shotgun's employee-drivers for automobile expense allowances constitute wages subject to employment taxes, the United States' motion for summary judgment is GRANTED. Furthermore judgment shall be entered in favor of the United States on Shotgun's claim for a refund.

Based on the foregoing analysis, the Court ORDERS the following:

1. The United States' motion for summary judgment on its counter claim is GRANTED;

2. Judgment shall be entered in favor of the Defendant United States on Plaintiff Shotgun's claim for a refund;

3. The United States should submit an updated supplemental calculation for the outstanding amount of unpaid taxes, interest and penalties owed by Shotgun as well as a proposed judgment by February 2, 2000.

IT IS SO ORDERED.

---

**5.** As Shotgun's reimbursement arrangement resulted in reimbursement of drivers in excess of the applicable IRS mileage reimbursement rate without remedying such overpayments this arrangement was dissimilar from the one described by Borelli. *See,* Borelli Declaration at 2.