269 F.3d 969 (9th Cir. 2001)
 SHOTGUN DELIVERY, INC., PLAINTIFF-COUNTER-DEFENDANT-APPELLANT,
v.
UNITED STATES OF AMERICA, DEFENDANT-COUNTER-CLAIMANT-APPELLEE.
UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 No. 00-15495
 Argued and Submitted July 12, 2001
Filed October 16, 2001
 
 Dennis L. Perez and Michel R. Stein, Hochman, Salkin, Rettig, Toscher & Perez, Beverly Hills, California, for the plaintiff-appellant.
 Randolph L. Hutter, United States Department of Justice, Tax Division, Washington, D.C., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California; Samuel Conti, District Judge, Presiding. D.C. No. CV-98-04835-SC.
 Before: Sneed, Wardlaw and Berzon, Circuit Judges.
 BERZON, Circuit Judge:
 
 
 1
 Shotgun Delivery, Inc. ("Shotgun") appeals the district court's grant of summary judgment in favor of the United States. The district court upheld the Internal Revenue Service's (IRS') assessment of more than $450,000 in delinquent employment taxes, plus interest and penalties, based on the determination that Shotgun should have paid such taxes on compensation paid to its delivery employees. Instead, Shotgun treated the amounts in question for tax purposes as reimbursement for employees' use of their own vehicles. We agree with the district court that Shotgun's method of mileage reimbursement does not qualify as a tax-exempt "accountable plan," within the meaning of Treasury Regulation &#167 1.62-2, and that the contested payments should therefore have been treated as wages, not as job-related cost reimbursements. Accordingly, we affirm the summary judgment as to Shotgun's tax liability. We conclude, however, that the question whether Shotgun reasonably relied on its accountant's advice should have gone to trial, and therefore reverse the district court's summary judgment as to the penalty assessment.
 
 I. BACKGROUND
 
 2
 The facts are largely undisputed. Shotgun operates a messenger and courier service serving the San Francisco Bay Area. In the tax years 1991 and 1992, Shotgun employed an average of 12 to 15 drivers who used their own vehicles to make pick-ups and deliveries. Shotgun billed its customers based primarily on the mileage from the pick-up to the delivery location. This mileage charge did not necessarily reflect the actual distance that would be driven since drivers could, and sometimes did, "double up," carrying more than one customer's package at a time. Shotgun also charged surcharges for waiting time, rush delivery, and excessive weight, further weakening any direct relationship between delivery charges and miles driven in making the deliveries.
 
 
 3
 The contract between Shotgun and its drivers provided that drivers would be "paid on a commission basis, and. . . receive 40% of the delivery charges for jobs [they] complete." Drivers were paid in two separate checks, issued one week apart. The first check (the "wage check") compensated the drivers, at the minimum wage, for the hours they worked. Shotgun withheld the appropriate employment taxes from the wage checks. The second check (the "mileage check") was issued in an amount equal to 40% of the receivables on that drivers' deliveries less the amount paid via the wage check. In other words, the two checks together always amounted to 40% of the delivery charges attributable to that driver.
 
 
 4
 According to Shotgun, the mileage check served to compensate drivers for the use of their vehicles based on the mileage driven. In fact, however, because the check amount was dependant on others factors as well, the effective reimbursement rate per mile varied substantially. Shotgun contends that its payment formula was intended to result in a reimbursement rate of between $.15 and $.25 per mile in the vast majority of cases and was arrived at by a statistical analysis of driver hours, miles, and delivery charges over a three month period. The district court found that the actual reimbursement rates ranged from $.04 to $.77 per mile. Shotgun Delivery, Inc. v. United States, 85 F. Supp.2d 962, 965 (N.D. Cal. 2000). A significant number of these reimbursement rates fell outside Shotgun's stated target range.
 
 
 5
 According to company policy, payments to drivers were subject to adjustment in the event that the payment formula resulted in mileage reimbursement at a rate greater than the IRS' maximum allowable rate of $.28 per mile.[1] Amounts in excess of that rate were to be deducted from the driver's mileage check and paid to the driver as wages during the next pay period. In practice, Shotgun concedes, this plan was not always followed-indeed, one cannot be sure from the record that it was ever followed-and some drivers did receive mileage checks whose effective rate exceeded the IRS limit.
 
 
 6
 Shotgun did not deduct employment taxes from the mileage checks, maintaining that its reimbursement scheme constituted a tax-exempt "accountable plan" under the Internal Revenue Code and applicable regulations. The IRS, after investigation, concluded otherwise, determining that Shotgun's method of reimbursement was a "nonaccountable" plan on which employment taxes should have been paid. The district court agreed, and accordingly, entered judgment against Shotgun for $615,290.40, plus post-judgment interest. 85 F. Supp.2d at 965. The district court also sustained penalties assessed by the IRS for negligence, rejecting Shotgun's contention that it had reasonably relied on the advice of its accountant, Robert Borelli. Id. at 966.
 
 
 7
 Shotgun appeals, arguing (i) that its mileage reimbursements qualified as a tax-exempt "accountable plan " under IRS regulations; (ii) that in any event, Shotgun substantially complied with the law; and (iii) that penalties were improper because the plan was structured in accordance with the advice of Shotgun's accountant.
 
 II. ANALYSIS
 A. Legal Standards
 
 8
 Since this case arises on summary judgment, our review is de novo. The focus of our inquiry is whether, viewing the evidence in the light most favorable to Shotgun, the nonmoving party, any genuine issues of material fact remain in dispute. Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).
 
 
 9
 The substantive tax requirements that underlie this case are as follows: The Internal Revenue Code permits employers to reimburse certain business expenses incurred by employees and exempts the reimbursed amounts from the withholding requirements and the payment of employment tax. See 26 U.S.C. &#167 62(a)(2)(A); 26 C.F.R. &#167 1.62-2(h). To be eligible for favorable tax treatment, such reimbursements must be pursuant to arrangements--called "accountable plans"--that require employees to (i) substantiate the expenses, and (ii) refund any reimbursement in excess of eligible expenses. 26 U.S.C. &#167 62(c).
 
 
 10
 In addition to the "substantiation" and "return of excess" requirements described above, reimbursements under an accountable plan must be for deductible expenses (see 26 U.S.C. &#167 &#167 161-196) and have a "business connection," that is, only permitted expenses that employees actually incur or are "reasonably expected to incur" in connection with their employment duties may be reimbursed. 26 C.F.R. &#167 1.62-2(d). If a reimbursement arrangement pays an amount to the employee regardless of whether the expenses will meet the business connection requirement, then "all amounts paid under the arrangement are treated as paid under a nonaccountable plan." Id. at &#167 1.62-2(d)(3).
 
 B. Variable Reimbursement
 
 11
 The district court concluded that Shotgun had failed to establish an adequate business connection for its reimbursement payments. 85 F. Supp.2d at 965. This conclusion lies at the core of the summary judgment against Shotgun and is the primary bone of contention on appeal.[2] The district court found that "[b]ecause Shotgun's tag rates were not based solely on distance traveled, and since Shotgun drivers could double up on deliveries, Shotgun's reimbursement arrangement, was in fact, reimbursing its drivers in a manner not correlated to expenses Shotgun's employees incurred or were reasonably likely to incur." Id.
 
 
 12
 The pertinent IRS regulations do not require perfect correlation between actual expenses incurred and reimbursements for job-related expenses; they merely stipulate that payments be based on expenses that drivers are reasonably likely to incur. Because driver commissions were a percentage of delivery charges that were themselves primarily mileage-based, Shotgun argues that its reimbursement payments were, in fact, based on a reasonable estimate of mileage expenses. Cf. Trucks, Inc. v. United States, 234 F.3d 1340, 1343 (11th Cir. 2000) ("[T]he focus of the business connection test is on the employer's reasonable expectations, not the drivers' actual expenditures.").
 
 
 13
 In Trucks, the Eleventh Circuit reversed a summary judgment entered against a trucking company that, like Shotgun, reimbursed driver expenses on a commission basis. Id. at 1344. There are, however, important differences between the reimbursement plan at issue there and the one used by Shotgun.[3] Crucially, Trucks, Inc. allotted a uniform 6% of revenues on each load to reimburse driver expenses, id., whereas the percentage Shotgun paid as reimbursement fluctuated, with its 40% commission going first to cover wages (paid at the minimum allowed by law), and then to a variable remainder (i.e. as much as possible) paid as reimbursement.[4] The key determinant driving these allocations is hours worked, a factor that bears little, if any, correlation with mileage expenses. Shotgun drivers doing identical routes with identical delivery charges could receive compensation distributions that differed according to driving time: Drivers who took longer to do a given route received more in taxable wages and less in tax-exempt reimbursement than their speedier peers, even though there is no reason to expect their mileage expenses would be different.
 
 
 14
 Nor is the variation in the effective reimbursement rate between drivers de minimis, as Shotgun would have it.[5] For example, if two drivers each do one 30-mile delivery (with the same delivery charge), but driver #1 takes one hour while driver #2 takes just 30 minutes, each driver receives the same total compensation (the 40% commission), but driver #1 earns more in taxable wages and less in non-taxable mileage reimbursement than driver #2. In this example, the "mileage reimbursement" component of the two drivers' compensation will differ by $.07 per mile; driver # 1 gets paid $4.25 in taxable wages; and driver #2 gets paid just $2.13 in wages. Thus, driver #2 gets an additional untaxed $2.12 in his mileage check -and Shotgun pays employment taxes on $2.12 less for him than for his peer, although both have driven the same 30 miles.
 
 
 15
 Shotgun offers no reimbursement-related justification for the variation in reimbursement rates its formula yielded. Instead, the undisputed facts support the district court's conclusion that Shotgun's system of "mileage reimbursement" was not designed to simply reimburse the drivers for their actual or reasonably expected mileage expenses. Rather, the evidence suggests that the plan's primary purpose was to treat the least amount possible of the drivers' 40% commission as taxable wages. We hold that reimbursements under such a plan do not meet the requirements of 26 C.F.R. &#167 1.62-2(d).
 
 C. Substantial Compliance
 
 16
 Shotgun contends that even its reimbursements fall outside the literal terms of the applicable regulations, it nonetheless substantially complied with the regulations' requirements. Substantial compliance with regulatory requirements may suffice when such requirements are procedural and when the essential statutory purposes have been fulfilled. American Air Filter Co. v. Commissioner of Internal Revenue, 81 T.C. 709, 719 (1983). Full compliance is necessary when the requirement relates to the substance of the statute or where the essential purposes have not been fulfilled. Id.
 
 
 17
 The business connection requirement here at issue is clearly substantive, as it enforces the fundamental distinction between taxable compensation and tax-exempt reimbursement which underpins this entire aspect of the tax system. Requiring a demonstrable connection to actual business expenses prevents companies from improperly sheltering otherwise taxable compensation under the guise of reimbursement. Moreover, IRS regulations specifically state that if any reimbursements fail this business connection test, the entire scheme is invalidated and "all amounts paid under the arrangement are treated as paid under a nonaccountable plan." 26 C.F.R. &#167 1.62-2(d)(3) (emphasis added). Therefore, we decline to find Shotgun in substantial compliance.
 
 D. Penalties
 
 18
 Shotgun appeals penalties upheld by the district court on the ground that it reasonably relied on the advice of its outside accountant, Robert Borelli. In general, "[w]hen an accountant . . . advises a taxpayer on a matter of tax law, such as whether liability exists, it is reasonable for the taxpayer to rely on that advice." Van Camp & Bennion v. United States, 251 F.3d 862, 868 (9th Cir. 2001) (quoting United States v. Boyle, 469 U.S. 241, 251 (1985) (alteration in original)); see also Boyle, 469 U.S. at 251 ("Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a `second opinion,' or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place.").
 
 
 19
 The record here amply supports the conclusion that Shotgun's plan was formulated based on Borelli's professional advice. Although the district court faulted Shotgun's implementation of the plan for deviating from Borelli's recommendations, 85 F. Supp. 2d at 966, Shotgun offered evidence that such deviations were inadvertent. In any case, under our holding today, Borelli's plan was just as flawed as that which Shotgun actually implemented. The district court's criticism that "Shotgun failed to consult Borelli subsequent to instituting their plan to ensure proper compliance, " id., is misplaced for the same reason. Drawing all permissible inferences in Shotgun's favor, a finder of fact could find that Shotgun's reliance was reasonable and that penalties were not warranted. Therefore, we reverse the summary judgment as to the penalties. Each party shall bear its own costs.
 
 
 20
 AFFIRMED in part, REVERSED in part.
 
 
 
 Notes:
 
 
 [1]
 The $.28 per mile limit applied in 1992; the 1991 limit was $.275.
 
 
 [2]
 The district court also held that Shotgun had not complied with the "return of excess" requirement. 85 F. Supp.2d at 965-66. We have no need to review that determination, as the lack of an adequate "business connection" is sufficient to invalidate Shotgun's reimbursement plan.
 
 
 [3]
 Indeed, the Trucks court itself distinguished the case from Shotgun. See id. at 1345 (distinguishing district court opinion in Shotgun).
 
 
 [4]
 Trucks may be distinguishable for other reasons: Several different types of expenses were being reimbursed in that case (meals, lodging, and incidentals), covering periods as long as two weeks. See id. at 1341. Requiring itemized receipts for these expenses would impose significant administrative costs. By contrast, Shotgun itself says that its reimbursements were intended solely to compensate mileage expenses, and it did keep and use records of the distance its drivers had driven for each delivery. Given these facts, it is unreasonable for Shotgun to reimburse according to a formula that incorporates extraneous factors and leads to arbitrary results.
 
 
 [5]
 As noted, the record shows that Shotgun's system resulted in widely varying reimbursements: Over 1/3 of the payments yielded an effective rate below $.15 per mile, approximately 1/3 between 15 and 23 cents, inclusive, and approximately 1/3 at $.24 and above.