# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KAZIM Z. ACAR,
             *Plaintiff-Appellant,*

v.

COMMISSIONER OF INTERNAL
REVENUE SERVICE,
             *Defendant-Appellee.*

No. 06-16820

D.C. No.
CV-06-00344-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
May 15, 2008—San Francisco, California

Filed September 23, 2008

Before: Betty B. Fletcher and Pamela Ann Rymer,
Circuit Judges, and Kevin Thomas Duffy,* District Judge.

Opinion by Judge B. Fletcher

---

*The Honorable Kevin Thomas Duffy, Senior United States District
Judge for the Southern District of New York, sitting by designation.

**COUNSEL**

Plaintiff-appellant Kazim Z. Acar, *pro se*.

Richard Farber, Patrick Urda (argued), Tax Division, Department of Justice, Washington, D.C., for the defendant-appellee.

**OPINION**

BETTY B. FLETCHER, Circuit Judge:

The district court, on summary judgment, upheld the decision of the Internal Revenue Service ("IRS") Appeals Office that Plaintiff Kazim Z. Acar ("Acar") was not entitled to a refund for the 1999 tax year on the basis of his purported retroactive election of the mark-to-market method of accounting under I.R.C. § 475(f) because (1) the election was untimely under Revenue Procedure 99-17, and (2) Acar was not entitled to a time extension under Treasury Regulation § 301.9100-3. Acar appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**I.**

As part of the Taxpayer Relief Act of 1997, Congress added section 475(f) to the Internal Revenue Code to allow taxpayers engaged in a trade or business as a securities trader to elect the mark-to-market method of accounting in calculating their tax obligation. I.R.C. § 475(f). A taxpayer who has made such an election must recognize gain or loss on any security held in connection with the securities trading busi-

ness as if the security were sold for its fair market value on the last business day of the taxable year. I.R.C. § 475(f)(1)(A)(i). Any gain or loss must be taken into account in that year. I.R.C. § 475(f)(1)(A)(ii). The practical effect of a section 475(f) election is that the gain or loss on held securities is treated as ordinary income or loss, *see* I.R.C. § 475(d)(3)(A)(i), (f)(1)(D), instead of as capital gain or loss, *see* I.R.C. §§ 1221(a), 1222. A section 475(f) election is advantageous for a taxpayer who has incurred trading losses because, by treating them as ordinary losses, he may deduct them fully from ordinary income and is not subject to the capital loss limitation that would allow such a deduction only to the extent of capital gains plus $3,000. *See* I.R.C. §§ 165, 1211. On the other hand, making a section 475(f) election is disadvantageous for a taxpayer who has made trading gains because those gains will be subject to the higher ordinary income tax rate instead of the lower capital gains tax rate. A section 475(f) election remains in effect until the taxpayer revokes it with the consent of the Secretary of the Treasury. *See* I.R.C. § 475(f)(3).

On February 8, 1999, the IRS issued Revenue Procedure 99-17, which sets forth the steps necessary to make a proper election under section 475.[1] *See* Rev. Proc. 99-17, 1999-1 C.B. 503, *superseded in part by* Rev. Proc. 99-49, 1999-2 C.B. 725. The Revenue Procedure provides that a taxpayer who wishes to elect mark-to-market accounting for a tax year after 1998 must file the necessary documents with his tax return for the year preceding the year for which he seeks the election. *See* Rev. Proc. 99-17 at § 5.03. Thus, to elect mark-to-market accounting for the 1999 tax year—the tax year at issue in this case—a taxpayer must file the necessary documents by April 15, 1999, the due date for his 1998 tax return.

---

[1]Congress delegated to the Commissioner of Internal Revenue the responsibility for specifying the manner in which a section 475(f) election is to be made. *See* I.R.C. § 475(g); H.R. Rep. No. 105-148, § 1, at 446 (1997).

Treasury Regulation § 301.9100-3, promulgated pursuant to I.R.C. § 7805,[2] provides for extensions of time for making elections, such as a section 475(f) election, that do not qualify for an automatic time extension. *See* Treas. Reg. §§ 301.9100-1, 9100-3. Under the regulation, a time extension will be granted "when the taxpayer provides the evidence . . . to establish to the satisfaction of the Commissioner [of Internal Revenue] that the taxpayer acted reasonably and in good faith, and the grant of relief will not prejudice the interests of the government." Treas. Reg. § 301.9100-3(a).

Between the late 1970s and 2004, Acar worked as a financial planner while also trading securities for himself. On his 1999 tax return, filed in 2000, Acar claimed a deduction for $3,000 in capital losses based on losses in the amount of $954,041 incurred in trading securities. Acar made no election for mark-to-market accounting until February 2002, when he informed the IRS of his desire to make a section 475(f) election for his securities trading beginning in tax year 1999.[3] Acar also provided the IRS with amended tax returns for the 1999 and 2000 tax years. On his amended 1999 return, Acar treated his trading losses as ordinary losses and, on that basis, claimed a refund for a tax overpayment of $46,396. On his amended 2000 return, Acar claimed as net operating losses the excess ordinary losses from 1999. Because Acar eventually settled with the IRS regarding his 2000 return, only the claimed refund for the 1999 tax year is at issue here.

In September 2002, the IRS conducted an audit and disputed Acar's claimed refund. The parties litigated the matter

---

[2]I.R.C. § 7805 provides in relevant part that "any election under [the Internal Revenue Code] shall be made at such time and in such manner as the Secretary shall prescribe." I.R.C. § 7805(d).

[3]Acar initially failed to provide the IRS with the required Form 3115, which is an official request for the Commissioner's authorization to change accounting methods. *See* Rev. Proc. 99-17, §§ 2.03, 5.03. However, Acar eventually provided the form with his 2003 tax return.

before the IRS Appeals Office, which partially disallowed Acar's claimed refund on the grounds that the section 475(f) election was untimely under Revenue Procedure 99-17 and that Acar did not qualify for a time extension under Treasury Regulation § 301.9100-3.[4]

In January 2006, Acar filed a *pro se* complaint in the district court, appealing the decision of the IRS Appeals Office. The government moved for summary judgment, arguing that: (1) Acar was not eligible to use mark-to-market accounting under section 475(f) because he was not a trader in securities in light of the allegedly small number of trades he made; (2) Acar was not entitled to use mark-to-market accounting because his election was untimely; and (3) Acar did not meet the requirements of Treasury Regulation § 301.9100-3 for obtaining a time extension for making the section 475(f) election. The district court rejected the government's first argument on the ground that there existed a genuine issue of material fact as to whether Acar was a trader in securities. However, the court accepted the government's remaining two arguments. Accordingly, the court granted the government's motion for summary judgment.

Acar filed a timely *pro se* appeal.

## II.

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

We review the district court's grant of summary judgment de novo. *Shotgun Delivery, Inc. v. United States*, 269 F.3d

---

[4]The IRS Appeals Office partially allowed the claimed refund on grounds unrelated to the section 475(f) election.

969, 971 (9th Cir. 2001). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *Card v. City of Everett*, 520 F.3d 1009, 1013 (9th Cir. 2008).

### III.

### A.

**[1]** We agree with the district court that Acar's § 475(f) election was untimely. Revenue Procedure 99-17 provides in relevant part that "for a taxpayer to make a § 475(e) or (f) election that is effective for a taxable year beginning on or after January 1, 1999, the taxpayer must file a statement that satisfies the requirements . . . of this revenue procedure . . . not later than the due date (without regard to extensions) of the original federal income tax return for the taxable year immediately preceding the election year . . . ." Rev. Proc. 99-17, § 5.03(1). It is undisputed that Acar did not file the necessary forms for his section 475(f) election until February 2002, well after the April 15, 1999 due date provided by Revenue Procedure 99-17.

Acar neither challenges the validity of Revenue Procedure 99-17 nor disputes that his election was untimely under it. Instead, Acar argues that he did not have a reasonable amount of time to file the election before the due date because of the short time period between the issuance of Revenue Procedure 99-17 in February 1999 and the due date for making the election. However, this argument is without merit because Acar testified in his deposition that he did not become aware of the provisions of section 475(f) until early 2002, almost three years after the due date for the 1999 tax year. Accordingly, Acar never could have made a timely election even if Revenue Procedure 99-17 had been issued earlier than February 1999.

## B.

We also agree with the district court that Acar does not qualify for a time extension under Treasury Regulation § 301.9100-3.

**[2]** Under the regulation, a time extension will be granted only if the taxpayer "provides the evidence . . . to establish to the satisfaction of the Commissioner that the taxpayer acted reasonably and in good faith . . . ." *Id*. § 9100-3(a). While the regulation sets forth several categories of circumstances in which a taxpayer is deemed to have acted reasonably and in good faith, *id.* § 9100-3(b)(1), it also provides three exceptions under which a taxpayer is deemed to have *not* acted reasonably and in good faith, even if the taxpayer falls into one or more of the aforementioned categories, *id.* § 9100-3(b)(3). *See Vines v. Comm'r*, 126 T.C. 279, 2006 WL 1280960, *7-9 (U.S. Tax Ct. 2006). One of these exceptions provides that a taxpayer will be deemed not to have acted in good faith if he

> [u]ses hindsight in requesting relief. If specific facts have changed since the due date for making the election that make the election advantageous to a taxpayer, the IRS will not ordinarily grant relief. In such a case, the IRS will grant relief only when the taxpayer provides strong proof that the taxpayer's decision to seek relief did not involve hindsight.

Treas. Reg. § 301.9100-3(b)(3)(iii). Both the IRS Appeals Office and the district court concluded that Acar was not entitled to a time extension because he had used hindsight in filing the late election.[5]

---

[5]The district court also found that Acar had submitted no facts establishing that he fell into any of the categories of circumstances in which a taxpayer is deemed to have acted reasonably and in good faith. *See* Treas. Reg. § 301.9100-3(b)(1). We need not review that finding because we conclude that the IRS Appeals Office and the district court were not clearly erroneous in holding that Acar used "hindsight" in filing the late section 475(f) election and therefore was not entitled to a time extension in any event. *See id.* § 9100-3(b)(3)(iii).

**[3]** In *Vines*, the Tax Court interpreted the "hindsight" exception in the context of a late section 475(f) election and concluded that "the relevant inquiry is whether allowing a late election gives the taxpayer some advantage that was not available on the due date." 2006 WL 1280960 at *10. The Tax Court in *Vines* concluded that the petitioner had *not* used hindsight within the meaning of § 301.9100-3(b)(3)(iii) because

> the only fact that changed after the due date for making the election was the discovery of the availability of the election itself. Petitioner conducted no trading activities and incurred no further losses between the time he should have filed the section 475(f) election and the date he actually filed the election. If a late election is allowed, petitioner will not be entitled to anything more than that to which he would have been entitled had he timely made the election.

*Id.* at *10. However, the *Vines* court contrasted the case before it with *Lehrer v. Commissioner*, T.C.M. 2005-167, 2005 WL 1607743 (U.S. Tax Ct. 2005), in which "[t]he taxpayers sought retroactively to convert their capital losses into ordinary losses several years later, with continued trading in the interim, in order to escape a deficiency and a section 6662 accuracy-related penalty." *Vines*, 2006 WL 1280960, at *10 (citing *Lehrer*, 2005 WL 1607743, at *1). The *Vines* court found that "[t]he taxpayers in *Lehrer* are the classic example of taxpayers who seek to use the benefit of hindsight." *Id.*

In a subsequent case, the Tax Court concluded that a taxpayer used hindsight under the regulation when he filed a § 475(f) election years after it was due, while having continued to trade securities in the interim, in order to convert capital losses to ordinary losses. *See Knish v. Comm'r*, T.C.M. 2006-268, 2006 WL 3725132, *5 (U.S. Tax Ct. 2006) ("A taxpayer attempting to make a mark-to-market election years after it is due (while continuing to trade in the meantime) in

an attempt to convert capital losses to ordinary losses is a classic example of a taxpayer seeking to use hindsight." (citations omitted)); *see also Mezrah v. Comm'r*, T.C.M. 2008-123, 2008 WL 1912432, *4 n.5 (U.S. Tax Ct. 2008) (explaining that in *Knish* the Tax Court found § 301.9100-3 relief "unavailable . . . because the taxpayers used hindsight to make the mark-to-market election when it was most advantageous.").

**[4]** While we are not bound by the Tax Court's interpretation of a Treasury regulation, *see UnionBanCal Corp. v. Comm'r*, 305 F.3d 976, 981 (9th Cir. 2002) ("We review the Tax Court's interpretation of tax code provisions, regulations, and treaties *de novo*."), we agree with the Tax Court's interpretation of Treasury Regulation § 301.9100-3(b)(3)(iii) as applied to a late § 475(f) election. In this case, allowing the late election would clearly give Acar "some advantage that was not available on the [April 15, 1999] due date," *Vines*, 2006 WL 1280960 at *10, namely the knowledge that he would incur trading losses, as opposed to trading gains, in the 1999 tax year (and subsequent years). With the benefit of that knowledge, Acar in 2002 sought to make a retroactive section 475(f) election in order to convert what had been capital losses on his original 1999 tax form into ordinary losses and, on that basis, claim a refund. Acar has provided no evidence indicating that he did not use hindsight in filing the late election. Accordingly, the undisputed evidence shows Acar used "hindsight" in filing the late election within the meaning of Treasury Regulation § 301.9100-3(b)(3)(iii).

Acar argues that our interpretation of "hindsight" conflicts with the preamble to the final Treasury regulations of § 301.9100. In the preamble, the Secretary of the Treasury stated:

> There are two policies that must be balanced in formulating the standards for § 301.9100 relief. The first is the policy of promoting efficient tax adminis-

tration by providing limited time periods for taxpayers to choose among alternative tax treatments and encouraging prompt tax reporting. The second is the policy of permitting taxpayers that are in reasonable compliance with the tax laws to minimize their tax liability by collecting from them only the amount of tax they would have paid if they had been fully informed and well advised.

Requirements Respecting the Adoption or Change of Accounting Method, 62 Fed. Reg. 68167-01, 68168 (Dec. 31, 1997).

**[5]** We find no conflict between this general statement and our specific application of the "hindsight" exception. The preamble states as one of its policies that a taxpayer should not pay more tax than he would have if he had been "fully informed and well advised." That statement does not suggest, however, that a taxpayer should be permitted to take advantage of knowledge that he could not have had when the election was due but that allows him, several years later, to elect retroactively the most advantageous accounting method.

Acar also argues that he could not have used "hindsight" in filing the election in February 2002 because any advantage that the election would give him as to earlier years would be outweighed by the possibility that in subsequent years he would make trading gains, not losses, and that therefore the election would become disadvantageous. This argument is without merit. Whether a taxpayer might come to regret his election in later years does not affect whether the taxpayer uses "hindsight" at the time he makes a retroactive election. A taxpayer who makes an election several years after having continued to trade in the interim still has "some advantage that was not available on the due date," *Vines*, 2006 WL 1280960, at *10, even if in subsequent years the election becomes disadvantageous. In any event, a taxpayer may

revoke the election with the consent of the Secretary of the Treasury. *See* I.R.C. § 475(f)(3).

**[6]** Accordingly, we conclude that the district court correctly determined that Acar was not entitled to a time extension under § 301.9100-3 as a matter of law because the undisputed evidence shows he used "hindsight" in requesting relief and therefore did not act "reasonably and in good faith." *See* Treas. Reg. § 301.9100-3(a), (b)(3)(iii).

## IV.

We affirm the district court's grant of summary judgment in favor of the government.

**AFFIRMED.**