In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3705

Eldon R. Kenseth and Susan M. Kenseth,

Petitioners-Appellants,

v.

Commissioner of Internal Revenue,

Respondent-Appellee.

Appeal from the United States Tax Court.
No. 2385-98.

Argued April 3, 2001--Decided August 7, 2001

Before Posner, Kanne and Rovner, Circuit
Judges.

Posner, Circuit Judge.  Some years ago
Mr. Kenseth filed an age-discrimination
suit against his former employer. He had
a contingent-fee contract with the law
firm that represented him, pursuant to
which the firm deducted 40 percent of the
proceeds of the settlement that it
obtained for him, remitting the balance
to him. The Tax Court ruled that the
entire proceeds, including the $91,800
deducted by the law firm as its fee, were
part of Kenseth's gross income. The fee
was (most of it anyway, as we'll see in
a moment) a deductible expense--but only
for purposes of the regular federal
income tax; it is one of a long list of
expenses ("miscellaneous expenses") that
are not deductible from gross income in
computing the alternative minimum tax, 26
U.S.C. sec. 56(b)(1)(A)(i); see Benci-
Woodward v. Commissioner, 219 F.3d 941,
944 (9th Cir. 2000), the purpose of which
is "to make sure that the aggregating of
tax-preference items [and of other
expenses specified in 26 U.S.C. sec.sec.
56, 58] does not result in the taxpayer's
paying a shockingly low percent-age of
his income as tax." First Chicago Corp.
v. Commissioner, 842 F.2d 180, 181 (7th
Cir. 1988). As a result of not being able
to deduct the law firm's fee, Kenseth
owed some $17,000 in alternative minimum
tax that he would not have owed had the

contingent fee been excludable from his gross income in computing his alternative minimum tax liability. He took a further hit because his deduction from gross income of the $91,800 pocketed by the law firm was reduced by $5,298 by reason of the 2 percent minimum for miscellaneous itemized deductions and by $4,694 because of the overall limitation on itemized deductions. 26 U.S.C. sec.sec. 67, 68.

In an effort to avoid these tax bites, Kenseth points out that under Wisconsin law (as under that of every other state, as far as we know), which is the law that governed his contract with the law firm, the firm had a lien on the proceeds of any settlement or judgment to the extent of the contingent fee. And the firm could even have enforced the lien if Kenseth had terminated the firm before the case went to judgment or settlement, provided the termination was not for cause. These facts show, he argues, that the part of the proceeds that went to pay the law firm's fee should not have been treated as income to him--in which event he would not have had to pay any alternative minimum tax on it.

The circuits are split on whether a contingent fee is, as the Tax Court held in this case, a part of the client's taxable income. Compare Foster v. United States, 249 F.3d 1275, 1279-80 (11th Cir. 2001); Srivastava v. Commissioner, 220 F.3d 353, 364-65 (5th Cir. 2000); Davis v. Commissioner, 210 F.3d 1346 (11th Cir. 2000) (per curiam); Estate of Clarks v. United States, 202 F.3d 854 (6th Cir. 2000); Cotnam v. Commissioner, 263 F.2d 119, 125-26 (5th Cir. 1959), all rejecting the Tax Court's position, with Young v. Commissioner, 240 F.3d 369, 376-79 (4th Cir. 2001); Benci-Woodward v. Commissioner, supra; Coady v. Commissioner, 213 F.3d 1187 (9th Cir. 2000), and Baylin v. United States, 43 F.3d 1451, 1454-55 (Fed. Cir. 1995), all accepting it. We have not yet had occasion to take sides in the controversy. But with all due respect to those who disagree, we think the Tax Court's resolution of the issue is clearly correct. Taxable income is gross income minus allowable deductions. 29 U.S.C. sec. 63(a); United States v. Whyte, 699 F.2d 375, 378 (7th Cir. 1983). If a taxpayer obtains income of $100 at a cost in generating that income of $25, he

has gross income of $100 and a deduction of $25, see sec. 162(a), yielding taxable income of $75; he does not have gross income of $75. If, therefore, for some reason the cost of generating the income is not deductible, he has taxable income of $100. See sec. 62(a)(1) and, with specific reference to legal fees incurred for the production of income, Alexander v. IRS, 72 F.3d 938, 944-46 (1st Cir. 1995). That is Kenseth's situation under the alternative minimum tax.

He concedes as he must that had he paid the law firm on an hourly basis, the fee would have been an expense. It would have been a deduction from, not a reduction of, his gross income, as held in the Alexander case. We cannot see what difference it makes that the expense happened to be contingent rather than fixed. If a firm pays a salesman on a commission basis, the sales income he generates is income to the firm and his commissions are a deductible expense, even though they were contingent on his making sales. Of course there is a sense in which contingent compensation constitutes the recipient a kind of joint venturer of the payor. But the plaintiff concedes, as again he must, that Wisconsin law does not make the contingent-fee lawyer a joint owner of his client's claim in the legal sense any more than the commission salesman is a joint owner of his employer's accounts receivable. The lawyer has a lien, that is, a security interest. Wis. Stat. sec. 757.36. But the ownership of a security interest is not ownership of the security. A firm whose assets are secured by a mortgage can deduct the interest from its income, but it is not allowed to reduce its income by the amount of the interest. Interest on a secured obligation is just another expense. And, though this is just the icing on the cake, Wisconsin now (the rule may once have been different, see Mohr v. Harris, 348 N.W.2d 599, 600-02 (Wis. App. 1984); Wallach v. Rabinowitz, 200 N.W. 646, 647 (Wis. 1924)) prohibits lawyers from acquiring "a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client." Wisconsin State Rules of Professional Conduct, Supreme Court Rule 20:1.8(j). The rule allows the lawyer to acquire a lien and to make a contingent-fee contract, but neither a lien nor a

contractual right is "proprietary."

It is true that if a contingent-fee lawyer expends effort on behalf of his client, who then terminates the contingent-fee contract, in effect confiscating the lawyer's work, the lawyer has a claim against the client; but he is no different in this respect from any other trade creditor stiffed by his debtor. In essence, Kenseth wants us to recharacterize this as a case in which he assigned 40 percent of his tort claim to the law firm. But he didn't. A contingent-fee contract is not an assignment, Young v. Commissioner, supra, 240 F.3d at 378; and in Wisconsin the lawyer is prohibited from acquiring ownership of his client's claim. So what Kenseth really is asking us to do is to assign a portion of his income to the law firm, but of course an assignment of income (as distinct from the assignment of a contract or an asset that generates income) by a taxpayer is ineffective to shift his tax liability. Lucas v. Earl, 281 U.S. 111, 114-15 (1930); United States v. Newell, 239 F.3d 917, 919-20 (7th Cir. 2001).

There is nothing exotic about this analysis--nothing, indeed, that depends on the particular contractual setting, that of a contingent-fee contract with a lawyer, out of which this case arises. The settlement of Kenseth's age-discrimination suit against his former employer presumably replaced lost income, which would have been taxable; and many of the expenses of producing that income, such as the cost of commuting, would not have been deductible. So incomplete deductibility here is not surprising or anomalous or inappropriate. We mentioned the commissioned salesman; consider now the operation of a construction business. All receipts are counted as gross income, and outlays to subcontractors and materialmen are deductible, even though these subcontractors have liens on the work and even though the general contractor could say that he just "assigns" a part of the job to the sub.

Kenseth says that he relinquished control over his income-producing asset, namely the age-discrimination claim. The relevance of this point to his tax liability is obscure, since owners of income-producing property frequently

relinquish control over the property, for example to a tenant, receiving income that is taxable; and the point itself is incorrect. Kenseth no more relinquished control of the claim to his contingent-fee lawyer than he would have to a fixed-fee lawyer. He could fire either one and would owe either one for work done but not paid for. The principal effect of the rule for which Kenseth contends would be to create an artificial, a purely tax-motivated, incentive to substitute contingent for hourly legal fees.

He argues that his position would eliminate an inequity created by the much-criticized alternative minimum tax. As an original matter, in taxation's Garden of Eden, it would indeed be difficult to think of a reason why Kenseth should have been denied the normal privilege of deducting from his gross income 100 percent of an expense reasonably incurred for the production of taxable income. And nothing in the background of the alternative minimum tax law indicates why attorneys' fees were, along with other "miscellaneous expenses," lumped in with tax-preference items and denied the normal privilege. See generally Laura Sager & Stephen Cohen, "How the Income Tax Undermines Civil Rights Law," 73 So. Calif. L. Rev. 1075, 1090-93 (2000). But the idea behind the tax is of course to limit otherwise allowable deductions, so that, to put it crudely, everybody who has income pays some federal income tax. So rather than ask why attorneys' fees are not deductible for purposes of the alternative minimum tax, we should ask why those fees should be distinguished from other miscellaneous deductions that the tax disallows; no answer comes to mind.

Enough; for in any event it is not a feasible judicial undertaking to achieve global equity in taxation, see Benci-Woodward v. Commissioner, supra, 219 F.3d at 944, and cases cited there, especially when the means suggested for eliminating one inequity (that which Kenseth argues is created by the alternative minimum income tax) consists of creating another inequity (differential treatment for purposes of that tax of fixed and contingent legal fees). And if it were a feasible judicial undertaking, it still would not be a proper one, equity in

taxation being a political rather than a jural concept. Indeed the cases that reject the Tax Court's position seem based on little more than sympathy for taxpayers. The granddaddy of those cases, Cotnam v. Commissioner, supra, a 2-1 opinion (so far as relates to the issue in our case) with Judge Wisdom dissenting, states its rationale as follows: "The amount of the contingent fee was earned, and well earned, by the attorneys. True, in a remote rather than a proximate sense, the entire amount of the judgment had also been earned by Mrs. Cotnam, but she could never have collected anything or have enjoyed any economic benefit unless she had employed attorneys, and to do so, she had to part with forty per cent of her claim long before the realization of any income from it." 263 F.2d at 126. This rationale badly flunks the test of neutral principles. It is often the case that to obtain income from an asset one must hire a skilled agent and pay him up front; that expense is a deductible expense, not an exclusion from income.

Affirmed.