118 T.C No. 29



UNITED STATES TAX COURT



FRANK AND BARBARA BIEHL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 422-00.                    Filed May 30, 2002.



        Ps are H and W.  H, a shareholder and former
employee of D Corp., filed suit with W, also a
shareholder of D, against D and its other shareholders
for wrongful termination of H's employment and for
dissolution of D.  Following a jury verdict of $2.1
million in favor of H on his wrongful termination claim,
Ps and D negotiated a global settlement under which D in
1996 paid a total of $1.2 million to settle H's wrongful
termination claim, $799,000 to H and $401,000 to Ps'
attorney; D settled Ps' dissolution claims by agreeing
to buy back Ps' shares in D in an installment sale with
payments scheduled to begin in 1997.  Ps did not report
or disclose on their 1996 joint income tax return the
$401,000 payment to their attorney, on the ground that D
made the payment pursuant to "a reimbursement or other
expense allowance arrangement" under I.R.C. sec.
62(a)(2)(A) and sec. 1.62-2, Income Tax Regs.  R
determined that the payment to Ps' attorney had to be
included in Ps' gross income and did not qualify as paid
pursuant to an "accountable plan" under sec. 1.62-2,

Income Tax Regs.  R therefore determined that Ps were required to treat the payment as an itemized deduction, rather than a deduction in computing adjusted gross income.  Such an itemized deduction is disallowed as a deduction under I.R.C. sec. 56(b)(1)(A)(i) in computing income subject to alternative minimum tax under I.R.C. sec. 55.

Held:  Amounts paid by a former employer to a former employee in settlement of his wrongful termination claim fail to satisfy the first requirement for an accountable plan, the "business connection" requirement of I.R.C. sec. 62(a)(2)(A) as set forth in sec. 1.62-2(d)(1), Income Tax Regs.; the payment to Ps' attorneys is included in Ps' gross income and is treated as an itemized deduction.


David M. Kirsch, for petitioners.

Julie A. Fields, for respondent.


OPINION


BEGHE, Judge:  This case is before the Court fully stipulated under Rule 122.[1]  Respondent determined a deficiency of $97,833 in petitioners' 1996 Federal income tax.  The issue for decision is whether petitioners may treat a certain attorney's fee as paid under "a reimbursement or other expense allowance arrangement" as defined in section 62(a)(2)(A) and (c) so as to be excluded from gross income or deducted in arriving at adjusted gross income under section 62(a).  Respondent contends

_____

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year at issue, unless otherwise specified.

that the fee must be included in gross income and treated as a miscellaneous itemized deduction from adjusted gross income, subject to the 2-percent floor under section 67(a) and disallowed as a deduction under section 56 in computing income subject to the alternative minimum tax (AMT) under section 55. We hold for respondent that the fee must be treated as a miscellaneous itemized deduction.

Background

Petitioners Frank and Barbara Biehl (Mr. Biehl and Mrs. Biehl) resided in San Jose, California, when they filed the petition.

Mr. Biehl was an employee, officer, shareholder, and director of North Coast Medical, Inc. (NCMI), a manufacturer and distributor of medical supplies. Mrs. Biehl was also a shareholder of NCMI.

On December 6, 1990, petitioners entered into a "shareholders agreement" with NCMI and its other shareholders. The shareholders agreement provided, among other things, that, for any suit brought for breach of the agreement, the prevailing party would be entitled to recover all costs and expenses of the suit, including attorney's fees.

The shareholders agreement was primarily concerned with the imposition of restrictions and requirements regarding ownership of the shares of NCMI, providing for, among other things,

restrictions on transfer, including maintenance of S election, rights of first refusal, the effects of involuntary transfers, legending shares, the status of transferees, and so on. The agreement recites that the parties intend that all present and future individual shareholders, other than Mrs. Biehl and the spouse of another shareholder employee, would be employees of the corporation, but that nothing in the agreement is intended to create or imply any obligation of NCMI to employ or continue to employ any shareholder.

In March 1994, petitioners filed an action in Santa Clara County, California, Superior Court against NCMI and its other shareholders. Petitioners were represented by the law firm of Olimpia, Whelan, & Lively. Petitioners' original fee agreement dated May 31, 1994, required petitioners to pay Olimpia, Whelan, & Lively an hourly fee for its services. The second fee agreement, dated January 25, 1996, changed the original hourly fee agreement to a contingency fee agreement. Under the terms of the contingency fee agreement, petitioners agreed to pay Olimpia, Whelan, & Lively one-third of all sums recovered.

Petitioners' action against NCMI included a claim for wrongful termination of Mr. Biehl's employment as vice president and general manager of NCMI and a claim for dissolution of NCMI that would have entitled petitioners to be paid for their shares

of NCMI. Petitioners' claims were bifurcated, and Mr. Biehl's wrongful termination claim was tried in March 1996. The jury returned a $2.1 million verdict in favor of Mr. Biehl.

Following the verdict on the wrongful termination claim, and without resolution by suit of petitioners' claims for dissolution of NCMI, petitioners and NCMI entered into negotiations looking toward a global settlement. On December 31, 1996, NCMI made two payments: $799,000 directly to Mr. Biehl and $401,000 directly to Olimpia, Whelan, & Lively. During January 1997, petitioners, NCMI, and the other defendants signed and delivered a "Confidential Settlement Agreement and Release of Claims" (settlement agreement), which set forth the terms of the settlement. The settlement agreement stated that the foregoing payments were made in settlement of Mr. Biehl's employment-related claims and in payment of attorney's fees related to the employment claims, respectively. The settlement agreement does not refer to NCMI's payment of the attorney's fee as a reimbursement to Mr. Biehl.

The settlement agreement resolved petitioners' dissolution claim by incorporating a stipulation for entry of judgment. The stipulation provided that the defendants would purchase petitioners' stock in NCMI for $1.2 million in an installment sale in final settlement of the corporate dissolution claim. Monthly payments on the installment sale were to begin on January

31, 1997, and continue for 143 months until December 31, 2008. The defendants were required to pay petitioners $13,321 each month, which included interest at the rate of 8-1/2 percent per year, calculated from December 31, 1996. If the defendants failed to comply with the stipulation, judgment would be entered in favor of petitioners for the unpaid balance of the purchase price, with interest, and petitioners' reasonable attorney's fees.

NCMI issued a Form 1099 to Mr. Biehl showing $1.2 million paid to him in 1996. On October 16, 1997, petitioners filed a motion in Santa Clara County Superior Court to enforce the settlement agreement. Petitioners alleged that NCMI violated the settlement agreement by issuing one Form 1099 to Mr. Biehl for $1.2 million, rather than two Forms 1099, one to Mr. Biehl for $799,000 and one to Olimpia, Whelan,& Lively for $401,000. Petitioners' motion to enforce the settlement agreement states that the income tax consequences of the settlement were a major concern to Mr. Biehl in the settlement negotiations, and that he had been satisfied with the settlement agreement because it required NCMI to pay the attorney's fee directly to Olimpia, Whelan, & Lively. Mr. Biehl's stated concern was that if NCMI issued a single Form 1099, he would have to include $1.2 million as his income from the settlement, versus $799,000 had NCMI issued two Forms 1099. According to the motion, the tax

treatment to NCMI would be the same whether it issued one Form 1099 or two Forms 1099; in either case NCMI would have a deductible expense of $1.2 million. The Superior Court granted the motion, but the record does not indicate whether one or two Forms 1099 were actually filed with respondent.

On their Form 1040, U.S. Individual Income Tax Return, for 1996, petitioners included in gross income the $799,000 NCMI directly paid to Mr. Biehl but did not report or disclose the $401,000 payment to Olimpia, Whelan, & Lively. Respondent determined in the statutory notice that petitioners should have also included in gross income and adjusted gross income the $401,000 that NCMI paid directly to their attorneys. Respondent's explanation of adjustments in the statutory notice of deficiency goes on to state: "Alternatively, if it is determined this income constitutes reimbursement, such reimbursement was made under a nonaccountable plan and is includible in gross income." Respondent determined that in either case petitioners would be entitled to a $401,000 miscellaneous itemized deduction from adjusted gross income. Accordingly, respondent determined the deficiency in issue of $97,833, primarily attributable to the AMT liability under section 55 resulting from disallowance of the itemized deduction under section 56(b)(1)(A)(i) in computing alternative minimum taxable income.

## Discussion

This is yet another case in which a taxpayer who successfully prosecuted a wrongful termination claim against his former employer, obtaining a taxable recovery, has attempted to avoid treating as an itemized deduction from adjusted gross income the attorney's fee paid to his attorney under their contingent fee agreement. It is clear under the jurisprudence of the Tax Court, and the Court of Appeals for the Ninth Circuit, to which this case would be appealable, that such a fee is not excluded from gross income under the "common law" of taxation.[2] Petitioners have therefore chosen another tack on which there is no authority on point in the Ninth Circuit: that the fee was

---

[2]See Kenseth v. Commissioner, 114 T.C. 399 (2000), affd. 259 F.3d 881 (7th Cir. 2001); Banaitis v. Commissioner, T.C. Memo. 2002-5; Freeman v. Commissioner, T.C. Memo. 2001-254; Banks v. Commissioner, T.C. Memo. 2001-48. Compare Srivastava v. Commissioner, 220 F.3d 353 (5th Cir. 2000), revg. in part, affg. in part, and remanding T.C. Memo. 1998-362; Davis v. Commissioner, 210 F.3d 1346 (11th Cir. 2000), affg. T.C. Memo. 1998-248; Estate of Clarks v. United States, 202 F.3d 854 (6th Cir. 2000); Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959), revg. in part 28 T.C. 947 (1957), with Sinyard v. Commissioner, 268 F.3d 756 (9th Cir. 2001), affg. T.C. Memo. 1998-364; Benci-Woodward v. Commissioner, 219 F.3d 941, 943 (9th Cir. 2000), affg. T.C. Memo. 1998-395; Coady v. Commissioner, 213 F.3d 1187 (9th Cir. 2000), affg. T.C. Memo. 1998-291; Brewer v. Commissioner, T.C. Memo. 1997-542, affd. without published opinion 172 F.3d 875 (9th Cir. 1999); Martinez v. Commissioner, T.C. Memo. 1997-126, affd. without published opinion 166 F.3d 343 (9th Cir. 1998); Fredrickson v. Commissioner, T.C. Memo. 1997-125, affd. without published opinion 166 F.3d 342 (9th Cir. 1998).

paid by NCMI to petitioners' attorney under a "reimbursement or other expense allowance arrangement" under section 62(a)(2)(A) and (c).[3]

If petitioners' argument should succeed, petitioners' return treatment, in which they did not include in gross income or even disclose NCMI's $401,000 payment to Olimpia, Whelan, & Lively, would be vindicated; petitioners would not even be required to include the payment in gross income and claim a deduction in arriving at adjusted gross income under section 62(a)(2)(A)--the payment would be excluded from Mr. Biehl's gross income as having been paid pursuant to an "accountable plan", as defined in section 1.62-2, Income Tax Regs.

For the reasons discussed below, we hold that Mr. Biehl's attorney's fee was not paid under an employee reimbursement or other expense allowance arrangement under section 62(a)(2)(A) and (c); the statutory language, the regulations implementing these provisions, legislative history explaining them, and caselaw show that attorney's fees of former employees in wrongful termination cases against their former employers do not qualify as having been paid under such an arrangement. The attorney's fee does not

---

[3] See Brenner v. Commissioner, T.C. Memo. 2001-127 (taxpayer failed to substantiate his expenses to his former employer as required by sec. 1.62-2(e), Income Tax Regs.); Alexander v. Commissioner, T.C. Memo. 1995-51 (taxpayer did not prove that payment was made under a reimbursement arrangement with his former employer), affd. 72 F.3d 938 (1st Cir. 1995).

satisfy the "business connection" requirement of section

62(a)(2)(A) and its 1939 Code predecessor, as that requirement

has been interpreted and continues to be applied.

Statutory Framework

Section 62 is entitled "Adjusted Gross Income Defined."[4]

---

[4]The concept of "adjusted gross income" was introduced to the Federal income tax by sec. 22(n) of the 1939 Code, enacted by sec. 8(a) of the Individual Income Tax Act of 1944, ch. 210, 58 Stat. 235, as part of a package to increase revenues to finance the war effort. The package included an increase in marginal rates which reached their highest historical level with the 1944 Act; also between 1939 and 1945, the personal exemption was cut in half, from $1,000 to $500, to extend the reach of the Federal income tax to more taxpayers. The 1944 Act introduced the concept of "adjusted gross income" to implement the newly created standard deduction, which was designed to simplify the return-filing process for the majority of new taxpayers and ease the administrative burden of examining the resulting increased number of tax returns.

The standard deduction simplified the process by providing individuals the option of deducting a fixed statutory estimate of their deductible nonbusiness expenses in lieu of itemizing each expense they incurred. The concept of adjusted gross income was incorporated into the Internal Revenue Code to provide, before the deduction of nonbusiness expenses, an income base to which the standard deduction would be applied. Adjusted gross income is supposed to be a rough estimate of amounts that a taxpayer has to pay for his nonbusiness expenses. When a taxpayer has determined how much income is available for his nonbusiness expenses, he may decide whether to account for his deductible nonbusiness expenses by claiming the standard deduction or by itemizing his expenses.

Under sec. 22(n)(1) of the 1939 Code and its successor in subsequent Codes, sec. 62(a)(1), business owners, partners in firms, and independent contractors could deduct all their business expenses from gross income in arriving at adjusted gross income without limitation and then either avail themselves of the standard deduction or itemize their nonbusiness expenses. Under sec. 22(n)(2) and (3) of the 1939 Code, as enacted by the 1944

(continued...)

Section 62(a) defines the adjusted gross income of an individual as gross income minus deductions enumerated in the paragraphs that follow.  Paragraphs (1) (entitled "Trade and Business Deductions"--without limitation) and (2) (entitled "<u>Certain</u> Trade and Business Deductions of Employees" (emphasis added)) give effect to a longstanding disparity in treatment between (1) business owners, partners in firms, and independent contractors, and (2) employees.[5]  The former are favored under paragraph (1)

---

[4](...continued)
Act, employees, irrespective of whether they itemized their deductions or claimed the standard deduction, were entitled to deduct, in arriving at adjusted gross income, only--under par. (2)--"expenses of travel, meals, and lodging paid or incurred by the taxpayer while away from home in connection with the performance by him of services as an employee" and--under par. (3)--"other than expenses * * * under a reimbursement or other expense-allowance arrangement with his employer".  See H. Rept. 1365, 78th Cong., 2d Sess. (1944), 1944 C.B. 821, 838-839.

[5]In the area under consideration, the deductibility of attorney's fees incurred in prosecuting unlawful termination claims, the disparity between sec. 62(a)(1) and (2)(A), and the corresponding limitations on itemized expenses and liability for the AMT of former employees are illustrated by <u>Guill v. Commissioner</u>, 112 T.C. 325 (1999), and <u>Kenseth v. Commissioner</u>, 114 T.C. 399 (2000), affd. 259 F.3d 881 (7th Cir. 2001).  In <u>Guill v. Commissioner</u>, <u>supra</u> at 329-330, an independent contractor former insurance agent's attorney's fee of $151,896, incurred in prosecuting his civil action against the insurance company that fired him, were held to be deductible from gross income in arriving at adjusted gross income pursuant to sec. 62(a)(1).  Conversely, in <u>Kenseth v. Commissioner</u>, <u>supra</u> at 407-408, the taxpayer's attorney's fee of $91,800 in connection with a Federal age discrimination claim against his former employer, did not reduce his gross income from the recovery and were instead found to be allowable only as an itemized deduction from adjusted gross income.  The results from the differing treatments are striking:  the taxpayer in <u>Guill</u> enjoyed the full tax benefit
(continued...)

by being allowed to deduct all expenses "attributable to a trade or business carried on by" them in computing their adjusted gross income; these expenses are coextensive with all the trade or business expenses they are entitled to deduct under section 162(a).  Employees, on the other hand, are allowed by paragraph (2) to deduct only a very restricted category of their trade or business expenses in computing adjusted gross income.  In addition, these expenses must be "in connection with" the employee's rendering of services to the employer.

Paragraph (2)(A) of section 62(a),[6] entitled "Reimbursed expenses of employees", provides that a taxpayer is allowed a deduction from gross income in arriving at adjusted gross income for "The deductions allowed by part VI (section 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance

_____

[5](...continued)
of a $151,896 deduction, whereas the taxpayer in Kenseth had his deduction of $91,800 reduced by $5,298 under sec. 67 and phased out to the extent of $4,694 under sec. 68 and was subject to an AMT liability of $17,198 as a result of the disallowance of the miscellaneous itemized deduction for AMT purposes under sec. 56(b)(1)(A)(i).

[6]Sec. 62(a)(2)(B) and (C) eases the restrictions for two narrow classes of employees.  Performing artists who meet the requirements of sec. 62(b) and employees of a State or a political subdivision are allowed to deduct all their otherwise allowable trade or business expenses from gross income in arriving at adjusted gross income.

arrangement[7] with his employer."  Sec. 62(a)(2)(A).  This language incorporates and illustrates a general proposition that applies across the board to section 62(a) and also highlights theadditional specific restrictions to which employees are

---

[7]Sec. 62(a)(2)(A) and its statutory predecessors do not contain and have never contained a definition of the term "arrangement".  However, the regulations under sec. 62(c) treat the terms "arrangement" and "plan" as synonymous.  Sec. 1.62-2(k), Income Tax Regs., provides that if "a payor's reimbursement or other expense allowance arrangement evidences a pattern of abuse of the rules of section 62(c) and this section, all payments made under the arrangement will be treated as made under a nonaccountable plan."

Dictionary definitions of the terms "arrangement" and "plan" are helpful, although not dispositive, in indicating that the terms encompass a continuing relationship, rather than a one-shot payment of the type at issue in the case at hand.  The primary definition of "arrangement" in Webster's New Universal Unabridged Dictionary 103 (2d ed. 1979) as "the act of putting in proper order; also, the state of being put in order" implies two or more elements.  The use of the term in bankruptcy arrangements has multiple elements encompassing multiple creditors of the debtor whose affairs are arranged and a variety of terms and provisions regarding the payment or provisions for payment of his debts.  Similarly the dictionary definitions of "plan", id. at 1372, as "a scheme for making, doing, or arranging something; a project; a program; a schedule", encompass or imply multiple elements for accomplishing something over a period of time.

The law of Federal preemption under the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, is in accord.  See Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987) (Maine statute requiring employers to provide one-time severance payment to employees terminated in event of plant closing not preempted by ERISA, which was intended to afford employers uniform administrative procedures governed by Federal regulations; ERISA concern arises only with respect to benefits whose provision requires ongoing administrative program to meet employer's obligations; thus Congress intended to preempt State laws relating to plans, rather than those simply relating to benefits).

subject, as compared with business owners, partners in firms, and independent contractors.

The general proposition is that a deduction is allowed under section 62(a) only if it is allowable under some other provision of the Internal Revenue Code (Code). Section 62(a) merely enumerates the deductions allowed an individual in computing adjusted gross income; it does not create any new or additional deductions that are not already provided for by some other section of the Code. See sec. 1.62-1T(b), Temporary Income Tax Regs., 53 Fed. Reg. 9873 (Mar. 28, 1988). In the case of paragraphs (1) and (2)(A) of section 62(a), the allowable deduction already provided under another section of the Code is the general provision for the deductibility of trade or business expenses found in section 162(a).

The specific restriction to which employees are subject under section 62(a)(2)(A) is that their deductions allowed in computing adjusted gross income are restricted to those expenses paid or incurred "in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer."[8] This language sets

---

[8]Before 1986, sec. 62(2)(B) allowed employees to deduct from gross income in arriving at adjusted gross income travel expenses while away from home, transportation expenses, and expenses incurred by "outside salesmen" engaged in soliciting business for the employer's place of business. Sec. 62(2)(B), (C), and (D), I.R.C. 1954. As a result of the enactment of the Tax Reform Act
(continued...)

forth the "business connection" requirement, discussed below, and is in contrast to the loosely interpreted "attributable to a trade or business" language of section 62(a)(1) that applies to business owners, partners in firms, and independent contractors.

The scope of section 62(a)(2)(A) is further restricted by section 62(c), as enacted by the Family Support Act of 1988, Pub. L. 100-485, sec. 702, 102 Stat. 2426, effective for tax years beginning after December 31, 1988.  Under section 62(c)(1) and (2), an employee business expense will be treated as covered by a "reimbursement or other expense allowance arrangement" only if the employee is required (1) "to substantiate the expenses covered by the arrangement to the person providing the reimbursement" and (2) to repay the person providing the reimbursement amounts received in "excess of the substantiated expenses covered under the arrangement."  To satisfy section 62(c), the arrangement must be provided under an "accountable plan" as set forth in the regulations issued to implement section 62(c).

---

[8](...continued)
of 1986, Pub. L. 99-514, sec. 132(b)(1), 100 Stat. 2115, and the Family Support Act of 1988, Pub. L. 100-485, sec. 702, 102 Stat. 2426, these employee expenses must satisfy the requirements of sec. 62(a)(2)(A) and (c) of present law regarding reimbursement arrangements and accountable plans.

Regulatory Framework

The first requirement for an accountable plan is that the expense must be allowed as a deduction under section 162(a). Sec. 1.62-2(d), Income Tax Regs.; see also sec. 62(a)(2)(A). If an expense satisfies this threshold requirement, it must be scrutinized under the regulations implementing section 62(c) to determine whether it was paid under a plan that qualifies as a "reimbursement or other expense allowance arrangement". Sec. 1.62-2(c), Income Tax Regs. Under section 1.62-2(c)(1), Income Tax Regs., a deductible expense is paid under a qualifying "reimbursement or other expense allowance arrangement" if the arrangement meets the requirements of paragraph (d) (which incorporates the business connection requirement of section 62(a)(2)(A) into the regulations implementing section 62(c)), and paragraphs (e) and (f) (which implement the substantiation and return of excess requirements of section 62(c)). Sec. 1.62-2(c)(2)(i), Income Tax Regs. If the "reimbursement or other expense allowance arrangement" meets these requirements, it qualifies as an "accountable plan". Sec. 1.62-2(c)(2)(i), (4), Income Tax Regs.

Section 1.62-2, Income Tax Regs., simplifies employees' reporting requirements by providing that amounts paid under an accountable plan are excluded from the employee's gross income, are not reported as wages or other compensation on Form W-2, Wage

and Tax Statement, and are exempt from withholding and payment of employment taxes.  Sec. 1.62-2(c)(4), Income Tax Regs.[9]

On the other hand, the regulations provide that amounts paid to an employee under a nonaccountable plan, one that does not meet all three requirements for an accountable plan, are reported as wages or other compensation on the employee's Form W-2 and are subject to withholding and payment of employment taxes.  Sec. 1.62-2(c)(5), Income Tax Regs.  As a result, the burden of

---

[9]  This is consistent with prior law, beginning in 1958, under which employees were not required to report amounts received as reimbursements for "travel, transportation, entertainment, and similar purposes paid or incurred by him solely for the benefit of his employer".  Sec. 1.162-17(b)(1), Income Tax Regs.  Before 1958, employees were technically required to include in gross income amounts received as reimbursement and claim a corresponding deduction in arriving at adjusted gross income, resulting in a wash.  See Stanley & Kilcullen, The Federal Income Tax, A Guide to the Law 25 (3d ed. 1955), 54 (2d ed. 1951).  Under the regulations, the reimbursed amount was not treated as wages and therefore not subject to any withholding.  See sec. 31.3121(a)-1(1), Employment Tax Regs. (1956).

Under current law, amounts paid under accountable plans are excluded from gross income as working condition fringe benefits under sec. 132(a)(3) and (d).  See sec. 1.62-1T(e)(5), Temporary Income Tax Regs., 53 Fed. Reg. 9874 (Mar. 28, 1988).  The regulations on working condition fringe benefits under sec. 132 track the requirements of the accountable plan regulations under sec. 62(c), providing that a cash payment made by an employer will not qualify as a working condition fringe benefit unless the employer requires the employee to use the payment for "expenses in connection with a specific or pre-arranged activity or undertaking for which a deduction is allowable under section 162 or 167", verify that the payment was used for such expenses, and return to the employer any part of the payment not so used.  Sec. 1.132-5(a)(1)(v), Income Tax Regs.; see also infra note 12.

substantiating the deductibility of the expenses is placed on the
employee.  Id.

The attorney's fees and costs incurred in a wrongful
termination suit against a former employer do not meet the first
requirement for an accountable plan, the "business connection"
requirement of section 62(a)(2)(A), as incorporated in section
1.62-2(d)(1), Income Tax Regs.  Because we hold that Mr. Biehl's
attorney's fee does not satisfy the business connection
requirement, we need not reach whether it satisfies the
substantiation and return of excess requirements of paragraphs
(e) and (f) of the accountable plan regulations.[10]

Threshold Requirement for Accountable Plan:  Deductible
Expense

The threshold requirement for deducting any expense from
gross income in computing adjusted gross income under section
62(a) is that the expense be allowed as a deduction under some

---

[10]In Shotgun Delivery, Inc. v. United States, 269 F.3d 969,
972 & n.2 (9th Cir. 2001), the Court of Appeals observed:

The district court concluded that Shotgun had
failed to establish an adequate business connection for
its reimbursement payments.  85 F. Supp. 2d at 965.
This conclusion lies at the core of the summary
judgment against Shotgun and is the primary bone of
contention on appeal.[2] * * *

[2] The district court also held that Shotgun had not
complied with the "return of excess" requirement.  85
F. Supp. 2d at 965-66.  We have no need to review that
determination, as the lack of an adequate "business
connection" is sufficient to invalidate Shotgun's
reimbursement plan.

other section of the Code.  For an expense to qualify as being paid under an accountable plan, it must be allowed as a deduction under section 162(a).  Sec. 1.62-2(d), Income Tax Regs.

Mr. Biehl's attorney's fee satisfies the threshold requirement of deductibility under section 162(a).  It is well settled that the costs of a former employee's prosecution of a wrongful termination claim are deductible by him as a trade or business expense under section 162(a).  McKay v. Commissioner, 102 T.C. 465, 489 (1994), vacated and remanded on another issue 84 F.3d 433 (5th Cir. 1996); Alexander v. Commissioner, T.C. Memo. 1995-51, affd. 72 F.3d 938 (1st Cir. 1995).  Section 162(a) allows a deduction for ordinary and necessary expenses incurred in the course of carrying on a trade or business.  A taxpayer may engage in the trade or business of "being an employee".  O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988).

In McKay v. Commissioner, supra at 489, we concluded that a former employee's attorney's fees in a suit against his former employer were "incurred in the course of carrying on * * * [the taxpayer's] trade or business" as an employee.  Our conclusion was based on the fact that the transaction subject to the litigation "arose in the context of the taxpayer's trade or business".  Id. at 488 n.23; see also Alexander v. Commissioner, supra.

The attorney's fee Mr. Biehl incurred is deductible under section 162(a).  Mr. Biehl was in the trade or business of being an employee of NCMI, and the transaction that was the subject of the lawsuit, NCMI's termination of his employment, arose in the context of Mr. Biehl's trade or business.  The attorney's fee NCMI paid to Mr. Biehl's attorney satisfies the threshold requirement of section 62(a), that the fee be deductible under section 162(a).  We therefore must scrutinize the attorney's fee under the business connection requirement of section 62(a)(2)(A) and the accountable plan regulations.

Business Connection Requirement

A deductible expense satisfies the business connection requirement only if it was "paid or incurred by the employee in connection with the performance of services as an employee of the employer."[11]  Sec. 1.62-2(d)(1), Income Tax Regs.; see also sec.

_____

[11]We note that in Brenner v. Commissioner, T.C. Memo. 2001-127, we stated that expenses that "arose out of * * * [the taxpayer's] prior employment" satisfied the business connection requirement.  That conclusory statement was obviously not intended to be a complete expression of the business connection requirement and the conditions for its satisfaction.  Our statement was merely one of a series of assumptions by the Court in order to decide whether the taxpayer properly substantiated his expenses to his former employer.  The statement was dictum because the Court had previously stated, in setting forth the basis on which it was deciding the case:

> We shall deal first with the question of whether * * * [the employer] reimbursed the legal fees pursuant to, and in accordance with, Article XIII. Since, as we shall explain, we cannot make that
>
> (continued...)

62(a)(2)(A). Mr. Biehl's attorney's fee fails to satisfy the business connection requirement. An expense satisfies the business connection requirement only if it was incurred pursuant to a reimbursement arrangement by an employee performing services on behalf of the employer who is required to provide the reimbursement. Our conclusion is required by the express language of section 62(a)(1) and (2)(A), the accountable plan regulations, the caselaw, and the legislative history of reimbursement arrangements.

Section 62(a)(1) allows taxpayers to deduct from gross income in arriving at adjusted gross income those "deductions * * * which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee." An expense is "attributable to a trade or business" if the expense satisfies the origin of the claim test for the purposes of deductibility.

The difference in the ways in which paragraphs (1) and (2)(A) of section 62(a) are interpreted is highlighted by <u>Guill v. Commissioner</u>, 112 T.C. 325 (1999). An independent contractor former insurance agent incurred legal costs of $151,896 in prosecuting his civil action for actual and punitive damages

_____

[11](...continued)
finding, we need not consider in any detail the remaining required findings * * *

against the insurance company that had fired him.  The taxpayer

recovered $51,499 in actual damages and $250,000 in punitive

damages.  The Commissioner conceded that the legal costs were a

business expense deductible on Schedule C, Profit or Loss From

Business, in computing adjusted gross income to the extent

attributable to the taxpayer's recovery of the actual damages.

However, the Commissioner determined that the punitive damages

were "other income", and that the remaining legal costs were a

nonbusiness itemized deduction under section 212(1) for the

production of income because they were attributable to the

taxpayer's recovery of the punitive damages.

We held for the taxpayer, reasoning that the punitive

damages were ancillary to the actual damages under South Carolina

law, and that the attorney's fees attributable to the punitive

damages recovery were sufficiently related; that is,

"attributable to" the taxpayer's sole proprietor insurance

business to be deductible by him under section 162(a):

> As a matter of fact, petitioner's lawsuit against
> Academy arose entirely from his insurance business.
> Each cause of action petitioner alleged in the lawsuit
> was spawned entirely from the fact that, after Academy
> fired him, it failed to honor the terms of their
> working agreement by not paying him the commissions to
> which he was entitled under their agreement. * * * [Id.
> at 329-330.]

As a result, we held that all the taxpayer's legal costs were

"attributable to" his trade or business and were deductible on

Schedule C as a business expense in arriving at adjusted gross income.  See also <u>McKay v. Commissioner</u>, <u>supra</u> at 492.

Section 62(a)(2)(A), in contrast to section 62(a)(1), allows taxpayers to deduct from gross income in computing adjusted gross income deductible expenses that are "incurred by the taxpayer, in connection with the performance by him of services as an employee".  The proper inquiry in deciding whether an expense has a "business connection" is what the expenditure was "in connection with", and not simply whether the expenditure arose from, or had its origins in, the taxpayer's trade or business.

At current count, the phrase "in connection with" appears 288 times in the Code.  There is a body of caselaw following and relying on <u>Snow v. Commissioner</u>, 416 U.S. 500, 503-504 (1974), that has interpreted the phrase broadly.  In <u>Snow</u>, the Supreme Court considered "in connection with" in the context of section 174(a)(1), which allows a taxpayer a deduction for "'experimental expenditures which are paid * * * in connection with his trade or business'".  <u>Id.</u> at 501.  The Court compared section 174(a)(1) to section 162(a), which allows a deduction for expenses paid "in carrying on a trade or business".  The Court found section 162(a) to be "more narrowly written" than the "in connection" language of section 174(a)(1).  <u>Id.</u> at 503.  The Court held that section 174(a)(1) allowed a deduction even though the taxpayer had not been engaged in a trade or business in the year in which the

deductions were claimed.  The Court supported its holding by consulting the legislative history of section 174 and concluding that Congress intended to level the playing field "between old and oncoming businesses and the like."  Id. at 504.

In Huntsman v. Commissioner, 905 F.2d 1182, 1184 (8th Cir. 1990), revg. 91 T.C. 917 (1988), the Court of Appeals for the Eighth Circuit considered section 461(g)(2), which allows a deduction for points paid "in connection with the purchase or improvement" of the taxpayer's principal residence.  The issue in Huntsman was whether a taxpayer who purchased a home with a short-term 3-year loan secured by a mortgage, and replaced the short-term obligation with a permanent loan could deduct the points paid on the permanent loan.  The Court of Appeals relied on Snow, to give "in connection with" a broad construction that would allow the deduction.  Specifically, the Court of Appeals held that the short-term financing was "an integrated step in securing the permanent * * * [loan] to purchase the home", adopting the reasoning of Judge Ruwe's dissent in the Tax Court. Huntsman v. Commissioner, supra at 1185.  The Court of Appeals emphasized that the taxpayers did not refinance their existing debt to lower their interest rate or achieve some goal not "directly" connected with home ownership.  Id. at 1182.

In Fort Howard Corp. v. Commissioner, 103 T.C. 345, 351 (1994), superseded by legislation and supplemented 107 T.C. 187

(1996), the Court analyzed section 162(k) which, at the time, prohibited deductions for amounts paid by a corporation "in connection with the redemption of its stock". The issue before the Court was whether the costs incurred in obtaining debt financing to complete a leveraged buyout that was treated as a redemption were "in connection with" the corporation's redemption of its stock and therefore nondeductible under section 162(k). Relying on Snow and Huntsman, we interpreted "in connection with" broadly to mean "associated with, or related". Id. at 352. We confirmed our reading by consulting the legislative history of section 162(k), which expressly stated that "in connection with" was intended to be construed broadly. Id. at 353. In applying the broad interpretation, we found that much of the evidence referred to the debt financing as "necessary" to the transaction. Id. at 352. In addition, the taxpayer's payment of financing costs, its receipt of the debt capital, and the redemption were events in a continuum that culminated in the redemption. Id. at 353. Similarly to the Court of Appeals for the Eighth Circuit in Huntsman, we found the financing costs were an "integral part" of a detailed plan. Id. We concluded that the financing costs were both a cause and effect of the leveraged buyout (the redemption). Id.

The foregoing authorities obviously support a broad reading of "in connection with", but that is by no means a reading

without limits.  The cases acknowledge as much by articulating the bounds of the phrase.  Specifically, <u>Fort Howard Corp. v. Commissioner</u>, <u>supra</u> at 353, and <u>Huntsman v. Commissioner</u>, <u>supra</u> at 1185, found a "connection" existed when the expenditure at issue was "integrated" or "integral to" that to which it is allegedly connected.

In the context of reimbursement arrangements, the statute, cases, regulations, and legislative history compel the conclusion that legal fees incurred by former employees are not "integrated" with or "integral to" the performance of services as an employee of the employer and therefore fall outside the broad scope of "in connection with".  The teaching of these authorities is that a reimbursed expense can be "in connection with" the performance of services as an employee only if it is incurred by an employee on behalf of the employer that is providing the reimbursement.

The business connection requirement of section 62(a)(2)(A) was incorporated into the regulations implementing section 62(c) by section 1.62-2(d), Income Tax Regs.  Under section 1.62-2(d), Income Tax Regs., a deductible expense has a business connection if it is "incurred by the employee in connection with the performance of services <u>as an employee of the employer</u>." (Emphasis added.)  The emphasized language clarifies that the expense must be incurred in the course of a current employer-employee relationship, not merely "spawned" by or have its origin

in the taxpayer's former trade or business of being an employee of his former employer.[12]

It is a well-settled axiom that the touchstone of the employer-employee relationship is the employer's dominion and control over, or right to control, the services performed by the employee.  Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318 (1992); Gen. Inv. Corp. v. United States, 823 F.2d 337, 341 (9th Cir. 1987).  That touchstone is missing when the expense is incurred after the relationship has ended.  If the former employee is no longer under the dominion and control of the former employer, the expense cannot be properly characterized as having been "paid or incurred by the employee in connection with the performance of services as an employee of the employer."  In such a case, as in the case at hand, the expense has a "connection" to the employee's performance of services only in the attenuated or remote sense that the expense can be considered to relate back to, or to have arisen from, the employment relationship.

---

[12]Property or services provided to an employee of the employer are excluded from gross income as a working condition fringe benefit under sec. 132(a)(3) to the extent that, if the employee paid for such property or services, the payment would be allowed as a deduction under sec. 162.  See sec. 132(d).  The regulations under sec. 132 explicitly give "employee" the meaning we find implicit in sec. 62(a)(2)(A):  an "employee" for purposes of sec. 132(a)(3), concerning working condition fringe benefits, is "Any individual who is currently employed by the employer." Sec. 1.132-1(b)(2)(i), Income Tax Regs.

The caselaw involving reimbursement arrangements in continuing employment relationships is consistent with this interpretation. In <u>Shotgun Delivery, Inc. v. United States</u>, 269 F.3d 969, 972 (9th Cir. 2001), the Court of Appeals for the Ninth Circuit characterized reimbursable expenses under an accountable plan as those that "have a 'business connection,' that is, only permitted expenses that employees actually incur or are 'reasonably expected to incur' in connection with their employment duties" (quoting section 1.62-2(d), Income Tax Regs.). The quoted language presupposes the existence of an employer-employee relationship when the expense is incurred and indicates that the expense must be "in connection with" the performance of the regular services for which the employee is employed.

The jurisprudence of this Court is in accord with the view expressed by the Court of Appeals for the Ninth Circuit. In <u>Rietzke v. Commissioner</u>, 40 T.C. 443, 453 (1963), we held that "Only amounts received from an employer which are actually expended for the employer's business or for business purposes designated by the employer may be deducted from the gross income of the employee" under a reimbursement arrangement under section 62. To make this showing, we required the taxpayer to come forward with proof that he incurred expenses "on behalf" of his employer. <u>Id.</u>; see also <u>Price v. Commissioner</u>, T.C. Memo. 1971-323 (describing expenses qualifying for section 62(a)(2)(A) as

those incurred on behalf of the employer under a reimbursement arrangement with that employer); Lickert v. Commissioner, T.C. Memo. 1964-47 (inquiring into whether the expenditures were incurred on behalf of the employer's business).

The conclusion that the expense must be incurred "in connection with" the duties performed by "an employee of the employer" is also confirmed by the legislative history of reimbursement arrangements. The predecessor of section 62(a)(2)(A) was section 22(n)(3) of the 1939 Code, as amended by the Individual Income Tax Act of 1944, ch. 210, 58 Stat. 235. In the House report, Congress described as an example of the kinds of expenses a taxpayer could deduct from gross income under section 22(n)(3) those incurred "for his employer". H. Rept. 1365, 78th Cong., 2d Sess. (1944), 1944 C.B. 821, 838-839 (emphasis added).

Similarly, in describing a technical amendment to section 62(a)(2)(A) by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, the Senate report described the qualifying expenses under a reimbursement arrangement as those incurred "on behalf of the employer". S. Rept. 100-445, at 7 (1988) (emphasis added).

Finally, the conference report accompanying enactment of section 62(c) describes a "true reimbursement" as one in which the employee is reimbursed for "business expenditures incurred on

the employer's behalf and for the employer's benefit." H. Conf. Rept. 100-998, at 203 (1988) (emphasis added). "[I]n effect the employee was acting as an <u>agent of the employer</u> in paying for the item." <u>Id.</u> at 202 (emphasis added).

The attorney's fee paid by NCMI to Mr. Biehl's attorney does not fit within this rubric. The attorney's fee is not a business expense that NCMI incurred through the use and employment of an employee acting on its behalf. There is no evidence, as there cannot be, that NCMI instructed Mr. Biehl to incur the contingent attorney's fee on NCMI's behalf in order to further NCMI's business of manufacturing and distributing medical supplies. When Mr. Biehl incurred the obligation to pay the attorney's fee, he had long before ceased being an employee of NCMI. He cannot be said to have been performing services as an employee of NCMI when he signed the fee agreement with Olimpia, Whelan, & Lively, or when Olimpia, Whelan, & Lively rendered legal services to Mr. Biehl pursuant to the agreement. Mr. Biehl did not incur the attorney's fee "in connection with the performance by him of services as an employee" of NCMI.

We acknowledge that, in a remote or an attenuated sense, the attorney's fee arose out of Mr. Biehl's performance of services because it was his prior employment and performance of services as an employee and the termination of the employment relationship that gave rise to the lawsuit. However, this is not an issue

that is governed by the origin of the claim test, the test that concerns the general deductibility of expenses under section 162(a) or section 212. See United States v. Gilmore, 372 U.S. 39, 49 (1963); Test v. Commissioner, T.C. Memo. 2000-362; McKeague v. United States, 12 Cl. Ct. 671, 674 (1987). Deductibility under section 162(a), as we have already discussed, is the threshold requirement for an accountable plan specifically and for section 62(a) generally. The attorney's fee paid by NCMI to Mr. Biehl's attorney was clearly attributable to Mr. Biehl's trade or business of being an employee and is deductible under section 162(a). See McKay v. Commissioner, 102 T.C. 465 (1994); Alexander v. Commissioner, T.C. Memo. 1995-51. The fact that the attorney's fee somehow may have been "spawned" by the performance of prior services is much too tenuous a connection. The attorney's fee incurred in the prosecution by a former employee of a wrongful termination claim is simply too far removed from the performance of an employee's regular duties to have been incurred "in connection with the performance by him of services as an employee" of the employer.

Despite the lack of an employer-employee relationship between Mr. Biehl and NCMI when the attorney's fee was incurred and paid, petitioners insist that the settlement agreement and the shareholders agreement establish an "arrangement" pursuant to which NCMI reimbursed Mr. Biehl's attorney's fee. Petitioners

argue, as the taxpayer argued in <u>Brenner v. Commissioner</u>, T.C. Memo. 2001-127, regarding the indemnification provision in the former corporate employer's bylaws, that the NCMI shareholders agreement, with its provision for payment of attorney's fees and costs to the prevailing party in any suit to enforce the agreement, was a reimbursement arrangement that was implemented by the settlement agreement. This argument is misplaced.

The shareholders agreement made no provision for recovery of attorney's fees and costs for a claim for wrongful termination of employment, even any such claim by a shareholder. The shareholders agreement expressly negates any implication or inference that it created any right to employment or continued employment of any shareholder. The shareholders agreement thereby forecloses any argument that it could somehow be construed as an arrangement to reimburse a shareholder's attorney's fees incurred in prosecuting a claim for wrongful termination of employment against NCMI.

Nor can the settlement agreement standing alone create a reimbursement arrangement that satisfies the business connection requirement (or any requirement, for that matter) of the accountable plan regulations. The settlement agreement was entered into long after Mr. Biehl had performed any services as an employee of NCMI. The attorney's fee is referred to in the settlement agreement only insofar as it directs NCMI to make

payment directly to Olimpia, Whelan, & Lively.  The settlement agreement does not refer to the attorney's fee as being incurred "in connection with" Mr. Biehl's duties as an employee, or as having been incurred "for" NCMI or "on behalf of" NCMI or incurred by Mr. Biehl "as an agent" of NCMI, nor does it make any reference to a reimbursement arrangement.

It is clear that the terms of the settlement (and events subsequent thereto) providing for NCMI's direct payment to Mr. Biehl's attorney of his attorney's fee in prosecuting his termination claim served Mr. Biehl's tax purposes, not any designated business purpose of NCMI.  As Mr. Biehl admitted in his motion and supporting affidavit in the California Superior Court to enforce the settlement agreement, the form and method of making the settlement payment or payments was a matter to which NCMI was completely indifferent.

The exhibits made part of the stipulation of facts on which this case has been submitted for decision include not only the settlement agreement pursuant to which NCMI paid $799,000 to Mr. Biehl and $401,000 to the account of his attorney, Olimpia, Whelan, & Lively, but also petitioners' motion papers subsequently filed with the California Superior Court in the termination lawsuit to enforce the terms of the settlement.  The gravamen of petitioners' motion was that NCMI had violated the terms of the settlement by issuing a single Form 1099 to Mr.

Biehl.  The motion asserts:

> FEB will be greatly prejudiced by receiving the single
> Form 1099 * * * [Had] NCM issued two separate Form
> 1099's, FEB and his tax advisors believe the IRS would
> treat only $799,000 as FEB's earned income * * * No AMT
> results if FEB is required to report only $799,000 as
> provided in the settlement by specifically separating
> the payments.  There was no other reason to provide for
> separate payments to FEB and Olimpia, Whelan, and
> Lively.
>
>      While this issue has obvious importance and
> potential tax consequences to FEB, to NCM it is a
> distinction without a difference, whether NCM issues
> two Form 1099's * * * or a single Form 1099 to FEB
> should not matter to NCM, either way, NCMI has an
> expense of $1,200,000 and the result to the payor is
> the same.  Thus, whether NCM issues one or two Form
> 1009's is simply an administrative task.

From the foregoing admissions it can fairly be inferred that
the separate payment to Mr. Biehl's attorney was negotiated on
his behalf in a futile effort to minimize his Federal income tax
liability, not to serve any business purpose of NCMI that could
be fulfilled by any current performance of services by Mr. Biehl
on behalf of NCMI.

There are intimations in the settlement documents and
petitioners' briefs that the global settlement reached by NCMI
and petitioners served the business purposes of NCMI by avoiding
its bankruptcy and trial of petitioners' other claims, thereby
enabling NCMI to continue as a viable business entity.
Petitioners also intimate that the separate payment arrangement
was of critical importance and that the parties could not have
achieved the settlement without the separate payment arrangement.

The foregoing purposes of NCMI are within the scope of the objectives that any defendant in a lawsuit expects to achieve by a settlement. However, those purposes are too far removed from the universe of purposes of employers and employees that Congress intended to serve by enacting section 62(a)(2)(A) and (c) and their statutory predecessors, as implemented by the regulations currently in effect.

The purposes served by the statutory and regulatory requirements for reimbursement arrangements have to do with the operation and administration of the employment relationship between employers and employees. When an employee "accounts" to an employer, the employer's agreement to reimburse the employee confirms that the expense was incurred on the employer's behalf, and that the employee was performing the duties required by the employer in incurring the liability and in paying for the item. The reimbursement arrangements contemplated by section 62(a)(2)(A) and the accountable plan regulations are far removed from the case at hand and all other payments, by reimbursement or otherwise, of the attorney's fees incurred by former employees in prosecuting wrongful termination claims against their former employers.

Conclusion

We acknowledge, as have courts in prior cases, that the result we reach today "'smacks of injustice'" because petitioners

are, in effect, denied the benefit of a deduction for Mr. Biehl's attorney's fee.  Kenseth v. Commissioner, 114 T.C. 399, 407 (2000) (quoting Alexander v. Commissioner, 72 F.3d at 946), affd. 259 F.3d 881 (7th Cir. 2001).  However, the injustice is the direct result of the plain meaning and original intent of section 62(a), with its built-in disparity in treatment of Schedule C expenses and employee expenses, and the mechanical operation of the itemized deduction provisions of sections 67 and 68 and the AMT provisions.  Petitioners' efforts to circumvent the business connection requirement built into section 62(a)(2)(A) and to avoid the restrictions on the deductibility of itemized deductions must fail.  We conclude in this case, as we have in prior cases, that it is the job of Congress, if it should decide in its wisdom to do so, to cure the injustice.  Kenseth v. Commissioner, supra at 407-408.  We sustain respondent's determination.

Decision will be entered for respondent.