# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-1760

———————

Steven J. Namyst; Terry L. Namyst,     *
                                         *

              Appellants,            *

                                         *   Appeal from the United States

     v.                             *   Tax Court.

                                         *

Commissioner of Internal Revenue,    *

                                         *

              Appellee.             *

———————

Submitted: December 16, 2005
Filed: January 27, 2006

———————

Before BYE, BOWMAN, and GRUENDER, Circuit Judges.

———————

BYE, Circuit Judge.

Steven J. Namyst was assessed tax deficiencies for the years 1996 through 1999. The Tax Court[1] determined money received from his employer constituted gross income rather than payments under an "accountable plan" pursuant to 26 C.F.R. § 1.62-2. It also assessed capital gains tax on equipment Namyst sold to his employer. We affirm.

---

[1]The Honorable Judge Joseph Robert Goeke, United States Tax Court.

# I

In 1994, Namyst began employment as an engineer for Intelligent Motion Controls, Inc. (IMC), working for John Kerkinni, a former co-worker. Between 1994 and March 1996, IMC paid Namyst wages which were reported on W-2 forms. Beginning in April 1996, however, IMC could no longer afford to pay Namyst's salary. Rather than leaving IMC's employ entirely, Namyst offered to work without salary, provided IMC would reimburse Namyst for expenses incurred. IMC did not treat these payments as wages, and the money was not reported on W-2 forms. In the years 1996, 1997, 1998, and 1999, Namyst received payments totaling $19,371.25, $19,652, $21,600, and $29,500, respectively.

In August 2003, the Tax Commissioner issued a notice of deficiency in the amounts of $2,497, $3,724, $2,875, and $3,343, respectively. Namyst petitioned the Tax Court to determine his liability, claiming the money received from IMC was partly non-taxable reimbursement under an accountable plan and partly non-taxable return of capital from the sale of his tools to IMC. At the hearing, Namyst and Kerkinni testified Namyst incurred expenses and submitted receipts to IMC, after which Kerkinni would review and record the receipts. When IMC had available funds, it issued checks to Namyst from the corporate checking account. Namyst received roughly one check per month, ranging from $500 to $4,000. His payments were almost always issued in round numbers. For his part, Namyst kept receipts and recorded amounts owed on a spreadsheet. This spreadsheet contained expenses dating back to 1994, although Namyst began receiving reimbursements in 1996.

Namyst also testified he sold IMC some of his own tools in 1996. The parties agreed on a price of $23,919.30, an amount Namyst claims is a "reasonable used value" for his tools and equipment. Namyst, however, could not produce any evidence of the actual cost basis of the tools. IMC claimed it paid for the tools in

installments when funds were available, but the payments did not differentiate between payments for reimbursements and payments for the sale of his tools.

The Tax Court determined the arrangement between Namyst and IMC was not an accountable plan and the sale of the tools to IMC generated a capital return. The Tax Court then apportioned the proceeds from the sale of the tools over the four years based on information in the record ($19,371.25 in 1996; $4,014.25 in 1997; $320.00 in 1998; and $214.00 in 1999) and determined the remaining amounts constituted gross income. Ultimately, the Tax Court determined deficiencies in the amounts of $1,544, $3,724, $2,875, and $3,343.

## II

We review the Tax Court's findings of fact for clear error and its conclusions of law de novo. Oren v. Comm'r, 357 F.3d 854, 857 (8th Cir. 2004) (citing Moser v. Comm'r, 914 F.2d 1040, 1044 (8th Cir. 1990)).

Gross income is "all income from whatever source derived" subject to certain exceptions. 26 U.S.C. § 61(a). Adjusted gross income, or a taxpayer's tax base, is gross income minus, *inter alia*, reimbursed expenses of employees, i.e., "expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer." 26 U.S.C. § 62(a)(2)(A). An adjustment to gross income is also referred to as an "above the line" deduction. If a business expense does not qualify under 26 U.S.C. § 62, it may still qualify as a "below the line" business expense deduction under 26 U.S.C. § 162(a).[2]

---

[2]Under the Internal Revenue Code, a taxpayer may deduct all of the "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). Unlike the adjustment under 26 U.S.C. § 62,

Pursuant to 26 U.S.C. § 62, Congress exempted from adjusted gross income payments received as part of an "accountable plan" between employers and employees under 26 C.F.R. § 1.62-2. If money received by an employee does not meet the standards set forth by the regulations, the payments are considered to be part of a "nonaccountable plan" and are treated as ordinary income. 26 C.F.R. § 1.62-2(c)(3) & (c)(5). To constitute an "accountable plan," the taxpayer must show: (1) a "business connection," i.e., the "reimbursements [received are] only for business expenses that are allowable as deductions" under 26 U.S.C. § 162; (2) all expenses were substantiated by the employee; and (3) the employee was required to return to the employer all amounts in excess of the substantiated expenses. 26 C.F.R. § 1.62-2(d), (e), & (f); see also Biehl v. Comm'r, 118 T.C. 467, 475-77 (T.C. 2002), aff'd, 351 F.3d 982 (9th Cir. 2003). If the money received by the employee constituted an "advance," the "amount of money advanced [must be] reasonably calculated not to exceed the amount of anticipated expenditures," and the employee must return any excess amounts advanced within a reasonable time. 26 C.F.R. § 1.62-2(f)(1). As the first two elements are not contested, we need only examine whether Namyst returned money received in excess of his substantiated expenses.

The Tax Court did not err in finding the payments to Namyst were not part of an accountable plan. IMC paid Namyst by check in whole dollar amounts, and no evidence was presented to show whether the payments to Namyst correlated with the expenses submitted by him. Because IMC did not differentiate between payments to Namyst for expenses reimbursed and for payments on his tools, it is difficult, if not impossible, to determine which payments covered which debts. Additionally, the record evidences overpayments, and Namyst did not calculate the overpayments or return to IMC any additional money received. Although Namyst denies any overpayments were made because of alleged reimbursable expenses in 1994 and

the 26 U.S.C. § 162 business deduction is subject to expenses incurred above two percent of the taxpayer's adjusted gross income. 26 U.S.C. § 67(a).

1995, Namyst's own calculations show overpayments received and not returned. Because Namyst cannot show substantiated expenses covering the entire amount he received, the findings of the Tax Court are not clearly erroneous. Thus, the payments made were not made under a qualified accountable plan, and the Tax Court did not err in treating the reimbursements as ordinary income.

We also reject Namyst's argument his substantiated payments should be treated as payments under an accountable plan while unsubstantiated payments should be treated as payments under a nonaccountable plan. To do so would effectively eliminate the third prong of the accountable-plan test and allow all substantiated expenses to be deducted from a calculation of adjusted gross income. Thus, because the plan as a whole did not meet the requirements of an accountable plan, all of the payments received pursuant to this nonaccountable plan should be treated as ordinary income.

Finally, the Tax Court did not err in treating the payment for tools as a return of capital with a zero cost basis. The tools were properly treated as long-term capital assets subject to capital gains tax. 26 U.S.C. §§ 1221(a)(2) & 1222(3). The amount of gain is the difference between the amount realized and the cost basis, adjusted for depreciation. 26 U.S.C. §§ 1001(a), 1012, & 1016(a)(2). Depreciation is deducted from the asset's basis, even if the taxpayer failed to take advantage of such deductions throughout the years. See 26 C.F.R. § 1.167(a)-10(a). Because Namyst presented no proof as to the cost of tools, he failed to establish any basis in the assets. See Reinke v. Comm'r, 46 F.3d 760, 764 (8th Cir. 1995) (holding the rule of Cohan v. Comm'r, 39 F.2d 540 (2d Cir. 1930), is inapplicable when the taxpayer presents "no evidence at all that would permit an informed estimate" of the claimed deduction, basis, or other tax advantage). Therefore, the tools have a zero cash basis, and the entire amount received for them should be treated as capital gain income. Accordingly, we affirm.

_____